In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2520

RONALD BURZLAFF,

*Plaintiff-Appellee,*

*v.*

THOROUGHBRED MOTORSPORTS, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 12-CV-92 — **Aaron E. Goodstein**, *Magistrate Judge.*

ARGUED FEBRUARY 10, 2014 — DECIDED JULY 10, 2014

Before WOOD, *Chief Judge*, HAMILTON, *Circuit Judge*, and
KENDALL, *District Judge.*\*

HAMILTON, *Circuit Judge*. The trial judge in this case provided textbook examples of how to construe a statute and how to modify pattern jury instructions that do not quite fit

---

\* The Honorable Virginia M. Kendall, United States District Judge for the
Northern District of Illinois, sitting by designation.

the facts of the specific trial. Plaintiff Ronald Burzlaff bought a defective "Stallion" motorized tricycle from defendant Thoroughbred Motorsports, Inc. When Burzlaff reported the first of multiple problems to Thoroughbred, the company instructed him to take his vehicle to a nearby Ford dealer for warranty repairs. Burzlaff wound up doing so repeatedly. After the vehicle had been out of service for repairs for 71 days during the first year, Burzlaff finally demanded under the Wisconsin Lemon Law that Thoroughbred replace the vehicle or refund his purchase price. Thoroughbred refused. A further effort to repair the vehicle at the Thoroughbred factory in Texas also failed to correct the defects.

Burzlaff then sued Thoroughbred under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and the Wisconsin Lemon Law, Wis. Stat. § 218.0171.[1] A jury found for Burzlaff on both claims. The district court awarded double damages plus costs and attorney fees for a total judgment of nearly $95,000 under the more generous provisions of the state Lemon Law. On appeal, Thoroughbred challenges the jury instructions on the Lemon Law claim, the sufficiency of the evidence on that claim, and the submission of the Magnuson-Moss claim to the jury. We affirm in all respects.

I.   *Factual and Procedural Background*

We present the facts as shown by trial evidence when viewed in the light most favorable to the jury's verdict. *Harvey v. Office of Banks and Real Estate*, 377 F.3d 698, 701 (7th Cir.

---

[1] Numerous amendments to the Lemon Law took effect on March 1, 2014. All citations to and quotations from the Lemon Law in this opinion use the version in effect in 2009 and 2010.

2004). On October 19, 2009, plaintiff Ronald Burzlaff purchased a Thoroughbred Motorsports "Stallion" Motor Trike at a total cost of over $35,000. The Stallion is an unusual vehicle with a steering wheel, heat and air conditioning, and other features uncommon in motorcycles. Defendant Thoroughbred Motorsports, Inc. is a small company based in Texas with only about 20 authorized dealers nationwide. Burzlaff bought his Stallion from the only Thoroughbred dealer in Wisconsin, which is located 300 miles from Burzlaff's home in Greenfield.

During the first year after purchase, Burzlaff experienced numerous problems with his vehicle. It was delivered without a gas cap and would not start. The heating and air conditioning failed. The transmission leaked. The cooling system leaked. Other plugs and seals leaked. The steering wheel was loose and the front wheel came out of alignment, making the vehicle unstable. One tire would not hold air. The radio did not work. The headlight and taillight sockets were loose.

In November 2009, Burzlaff telephoned Thoroughbred about the first issues with his vehicle. He explained that the only Wisconsin dealer would be inconvenient for repairs because it was too far away. Burzlaff had seen a 2009 brochure for the Stallion advertising its Ford-made drivetrain and boasting that the Stallion could be serviced at Ford dealers. He asked about the possibility of going to a Ford dealer. The Thoroughbred representative told Burzlaff he could take it to a nearby Ford dealer for warranty repairs. (Burzlaff was also told to go to specialized shops for other problems, such as radio and tire repairs.)

During the first year, the vehicle was in various shops for repairs for a total of 71 days. That number is significant because a vehicle is not deemed a "lemon" under the Wisconsin law unless either there have been four unsuccessful attempts to repair the same defect or the vehicle is out of service for 30 or more days during the first year. See Wis. Stat. § 218.0171(1)(h) (defining "reasonable attempt to repair").

Thoroughbred did not specify a particular Ford dealer. Burzlaff chose to go to Amato Ford, a nearby Ford dealer. Although Amato Ford was not an authorized Thoroughbred dealer, Burzlaff knew it had previously serviced other Stallions. Over that first year, Thoroughbred provided Amato Ford with parts and excerpts from the Stallion manual to help it repair Burzlaff's vehicle. Amato Ford billed the repairs directly to Thoroughbred, which paid for all of them. Thoroughbred never instructed Amato Ford to stop repairing Burzlaff's vehicle.

Before the end of the first year after the purchase, Burzlaff met the president and founder of Thoroughbred, Jeffrey Vey, at a motorcycle rally in Wisconsin. Burzlaff complained about the ongoing repairs and asked Vey to have Thoroughbred replace the vehicle or refund his purchase price. Vey refused to replace or refund, but he offered to transport Burzlaff's Stallion back to the factory in Texas for repairs. Burzlaff followed up with a letter to Vey later that month, but the vehicle was not actually picked up for transport to the factory until some weeks later, more than one year after the purchase.

Six more months passed before the vehicle was returned to Burzlaff. Burzlaff then filed suit against Thoroughbred in a Wisconsin state court alleging violations of the Lemon

Law, Wis. Stat. § 218.0171, and the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. Thoroughbred removed the case to the Eastern District of Wisconsin. The parties consented to have Magistrate Judge Goodstein preside over the case under 28 U.S.C. § 636(c). The parties stipulated the amount of pecuniary damages to be $35,633.23, which was the total purchase price.

The jury found for Burzlaff on both claims. The court awarded double damages, then available under the Wisconsin Lemon Law, Wis. Stat. § 218.0171(7), plus costs and attorney fees, for a total judgment of $94,907.96. No damages were awarded on the Magnuson-Moss claim. On appeal, Thoroughbred challenges the Lemon Law jury instructions, the sufficiency of the evidence, and the submission of the Magnuson-Moss Act claim to the jury. After a brief detour into subject matter jurisdiction, we address those contentions in turn.

II. *Analysis*

  A. *Federal Jurisdiction*

This case turns the usual pattern of supplemental jurisdiction on its head. Here the district court had original jurisdiction over the *state* law claim but only supplemental jurisdiction over the *federal* law claim. To explain this oddity:

Thoroughbred's notice of removal asserted two grounds for federal jurisdiction: federal question jurisdiction based on the Magnuson-Moss Act claim and diversity because the parties were citizens of different states and over $75,000 was in controversy. But federal question jurisdiction under 28 U.S.C. § 1331 is not available here. A warranty claim under the Magnuson-Moss Act may be brought in either state or

federal court, but for the federal court to have jurisdiction under the Act, the amount in controversy must equal or exceed "the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B); *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 403–04 (7th Cir. 2004).

The Magnuson-Moss Act provides for damages, including attorney fees, but Burzlaff's compensatory damages under the Act could not have been more than the purchase price of $35,633.23. Cf. *Schimmer*, 384 F.3d at 405 (holding that amount in controversy was less than purchase price where full refund was not permissible under state law); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957–59 (7th Cir. 1998) (setting forth detailed calculations for determining amount in controversy under the Magnuson-Moss Act). Burzlaff's attorney fees at the time of removal could not reasonably have reached the nearly $15,000 needed to make up the difference. See *Gardynski-Leschuck*, 142 F.3d at 958 (in determining amount in controversy under Magnuson-Moss Act, attorney fees are limited to those incurred at time of filing in federal court).

Oddly enough, though, the claim under the Wisconsin Lemon Law satisfies the higher $75,000 amount-in-controversy requirement for federal diversity jurisdiction under 28 U.S.C. § 1332. In 2009 and 2010 when Burzlaff's vehicle was new, the Wisconsin law allowed damages of twice the amount of any pecuniary loss. Wis. Stat. § 218.0171(7). (The provision was amended effective March 1, 2014 to limit such awards to actual pecuniary loss.) The parties stipulated here that the pecuniary loss was $35,633.23, and Burzlaff had used the vehicle very little, which avoided complications

that could otherwise have arisen as in *Gardynski-Leschuck* and *Schimmer*.

Twice the pecuniary loss was $71,266.46. That was still short of $75,000, but the Wisconsin law also provides for recovery of disbursements and attorney fees. Wis. Stat. § 218.0171(7). For purposes of determining the amount in controversy under diversity jurisdiction, attorney fees can be included if they are part of damages, but the amount is limited to the amount accrued at the time of removal. See *Gardynski-Leschuck*, 142 F.3d at 958–59. It was not unreasonable to think that Burzlaff and his attorney had invested at least $3,733.55 in fees at that time. Thoroughbred certainly thought that was true when it represented that the amount in controversy exceeded $75,000 in the notice of removal. We could not say it was a legal certainty at the time of removal that Burzlaff could not recover damages of more than $75,000. See *Carroll v. Stryker Corp.*, 658 F.3d 675, 680–81 (7th Cir. 2011). The district court therefore had original diversity jurisdiction over the state law claim. It could then properly exercise supplemental jurisdiction over the Magnuson-Moss Act claim. 28 U.S.C. § 1367(a); *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 522 (7th Cir. 2003). We move on to the merits.[2]

---

[2] If we had to order remand for lack of jurisdiction because Thoroughbred itself miscalculated the amount in controversy, this lawsuit would probably become even more expensive for Thoroughbred. Burzlaff could seek an award of the "just costs and any actual expenses, including attorney fees, incurred as a result of the removal," 28 U.S.C. § 1447(c), which could be substantial where the case has been taken to trial in federal court. See generally *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) (establishing standard for fee awards under § 1447(c)); *International Union of Operating Engineers v. County of Plumas*, 559 F.3d 1041, 1045–46

B.  *Modification of Pattern Jury Instructions*

Thoroughbred's principal argument on the merits is that the district court erred by modifying the Wisconsin Pattern Jury Instructions for Lemon Law claims. "We review jury instructions *de novo* to determine whether they provide fair and accurate summaries of the law." *Savino v. C.P. Hall Co.*, 199 F.3d 925, 934 (7th Cir. 1999). In crafting jury instructions, however, the district court is afforded substantial discretion, and we will reverse only if it failed to state the law completely and correctly and the error caused prejudice. *Id*. The district court's modifications were entirely appropriate to adapt the pattern instructions to the facts of this case.

To explain, we must examine the substantive provisions of the Wisconsin Lemon Law, which provides a remedy for a purchaser of a defective motor vehicle beyond the contractual warranty. Wis. Stat. § 218.0171. The applicable version of the Lemon Law (in effect prior to March 1, 2014) required the consumer to provide notice of the defect (or "nonconformity") and an opportunity to repair:

> If a new motor vehicle does not conform to an applicable express warranty and the consumer reports the nonconformity to the manufacturer, the motor vehicle lessor or any of the manufacturer's authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or one year after first delivery of the motor vehicle to a con-

---

(9th Cir. 2009) (directing district court to decide removal fees where appeal resulted in remand to state court after judgment for plaintiff in district court). The case would also have to be retried in state court, requiring further attorney fees on both sides.

> sumer, whichever is sooner, the nonconformity shall
> be repaired.

Wis. Stat. § 218.0171(2)(a). A "nonconformity" is defined as "a condition or defect which substantially impairs the use, value or safety of a motor vehicle" and is covered by an express warranty, but the definition excludes the results of abuse, neglect, or unauthorized modification of the vehicle by the consumer. § 218.0171(1)(f).

If the nonconformity persists after a "reasonable attempt to repair," the manufacturer must provide either a full refund or a replacement vehicle. Wis. Stat. § 218.0171(2)(b). The "reasonable attempt to repair" has failed if four attempts to repair the same nonconformity are unsuccessful or if the vehicle is out of service for repairs for 30 days or more in the first year. § 218.0171(1)(h).

Thoroughbred challenges nine similar modifications of the jury instructions. We focus on one, the instruction titled "Lemon Law Claim: Out of Service Warranty Nonconformity," to illustrate the issue. Here is the relevant excerpt of the pattern instruction:

> … you must find that (plaintiff) notified the manufacturer or any authorized dealer of a (the) nonconformity(ies) and gave the manufacturer or dealer an opportunity to repair the condition or defect.

Wis. Pattern Jury Instruction – Civil 3303. Based on the evidence in this case that the manufacturer told the consumer to have the vehicle repaired at Amato Ford, which was not an authorized dealer for the manufacturer, the court modified the pattern instruction as shown by italics in this passage:

… you must find that Ronald Burzlaff notified the manufacturer or any authorized dealer of the nonconformities and gave the manufacturer, an authorized dealer, *or any other repair facility acting on the manufacturer's behalf,* an opportunity to repair the nonconformities.

The parties agree that notice of a nonconformity must be given to "the manufacturer, the motor vehicle lessor or any of the manufacturer's authorized motor vehicle dealers." Wis. Stat. § 218.0171(2)(a). Burzlaff did so. The statute also requires a consumer to make the vehicle "available for repair." *Id*. Thoroughbred contends that if the vehicle is not taken to one of the listed entities for the actual repairs, the Lemon Law does not apply. Burzlaff counters that the statute limits only those entities to which notice must be given. He argues that the vehicle has been made "available for repair" once it is taken to any authorized shop, whether the shop is also an authorized dealer or not. Burzlaff's approach fits better both the text and purpose of the Lemon Law.

The text of the Lemon Law has fairly strict requirements for who must receive notice but flexible options for who can perform repairs. The consumer must report the nonconformity to the manufacturer or to one of its authorized dealers (or, in case of a vehicle lease, to the lessor). That notice makes sure that the manufacturer learns of the problem. To take advantage of the law, the consumer must then make the vehicle "available for repair," which obliges the manufacturer to repair the nonconformity. Wis. Stat. § 218.0171(2)(a).

The text of the statute simply does not say, as Thoroughbred argues, that the vehicle is "available for repair" only if it is actually taken to the manufacturer or an authorized

dealer (or, if applicable, the lessor). The more flexible language reflects an obviously sensible approach. It preserves Lemon Law protection when the manufacturer directs the consumer to a repair shop other than the manufacturer's own authorized dealers, who may be few and far between.[3]

Flexibility for repairs is also consistent with the law's broader legislative purpose. The Wisconsin Lemon Law was passed to provide consumers with an alternative to the "inadequate, uncertain and expensive remedies of the Uniform Commercial Code or the Magnuson-Moss Warranty Act." *Hughes v. Chrysler Motors Corp.*, 542 N.W.2d 148, 150 (Wis. 1996). The Lemon Law is "'obviously remedial in nature,'" and courts should "'construe the statute with a view towards the social problem which the legislature was addressing when enacting the law.'" *Id*. at 151, quoting *Hartlaub v. Coachmen Industries, Inc.*, 422 N.W.2d 869, 873 (Wis. App. 1987). Following this approach, *Hughes* held that "pecuniary loss" as used in the damages provision of the Lemon Law included the purchase price, not merely the costs flowing from the defect. *Id*. ("Certainly the law is intended to do

---

[3] Thoroughbred fails to recognize that the more flexible reading benefits manufacturers as well as consumers. The law would make the products of small manufacturers like Thoroughbred much less attractive to consumers if they could preserve their rights under the Lemon Law only by repairing a nonconforming vehicle at one of a small number of dealers or the factory itself. Instead, a small manufacturer may pay for work at a more convenient location, as Thoroughbred did in this case, while still protecting consumers' rights under the Lemon Law.

more than simply parrot the remedies previously available to the consumer.").[4]

The Lemon Law would not be an effective safeguard under Thoroughbred's narrow interpretation. A consumer could lose the law's protections by taking the vehicle to a different repair facility *when directed to do so by the manufacturer*. That result would be unjust to the point of absurdity. The Wisconsin Supreme Court has quoted with approval the understanding that it "'should go without saying that the legislature contemplated that all the parties covered by the Lemon Law should act in good faith.'" *Marquez v. Mercedes-Benz USA, LLC*, 2012 WI 57, ¶ 17, 815 N.W.2d 314, 319 (Wis. 2012), quoting *Herzberg v. Ford Motor Co.*, 2001 WI App. 65, ¶ 18, 626 N.W.2d 67, 72 (Wis. App. 2001). The interpretation proposed by Thoroughbred in this case would be an invitation to bad faith conduct by manufacturers.

In essence, Thoroughbred wants this court to find that Burzlaff lost his rights by following its own instructions for repairing the vehicle. The text of the statute does not support that result, which also raises obvious issues of estoppel. The Supreme Court explained the general principle long ago: "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by dis-

---

[4] While we have sometimes expressed doubts about the value of the canon that remedial statutes are to be construed liberally, see *Bushendorf v. Freightliner Corp.*, 13 F.3d 1024, 1026 (7th Cir. 1993), Wisconsin courts apply the canon to the Wisconsin Lemon Law. E.g., *Garcia v. Mazda Motor of America, Inc.*, 2004 WI 93, ¶ 8, 682 N.W.2d 365, 368 (Wis. 2004). Our role here is to decide questions of state law as we predict the state's highest court would decide them.

appointing the expectations upon which he acted." *Dickerson v. Colgrove*, 100 U.S. 578, 580 (1879); see also *Union Mutual Ins. Co. v. Wilkinson*, 80 U.S. 222, 233 (1871) (insurer could not use its own agent's actions as defense against payment of benefits); *Texas Co. v. Chicago & A.R. Co.*, 126 F.2d 83, 90–91 (7th Cir. 1942). We made a similar point in *Dormeyer v. Comerica Bank—Illinois*, 223 F.3d 579, 582 (7th Cir. 2000), where we explained how an employer could be estopped from relying on a statutory defense under the Family and Medical Leave Act if it had misled an employee about her eligibility for leave.

More to the point in this case applying state law, the Wisconsin courts apply equitable estoppel to avoid similarly unjust results. E.g., *Milas v. Labor Ass'n of Wisconsin, Inc.*, 571 N.W.2d 656, 660–61 (Wis. 1997) (county employer's participation in arbitration estopped it from denying validity of agreement requiring arbitration); *Dunn v. Pertzsch Constr. Co.*, 157 N.W.2d 652, 654 (Wis. 1968) (owner of land estopped from asserting trespass claim against business to whom her husband sold fill from land); *Baierl v. Riesenecker*, 230 N.W. 605, 606 (Wis. 1930) (applying equitable estoppel to bar purchaser of property from denying validity of mortgage after having deducted mortgage principal from purchase price).

Thoroughbred first advertised that Stallions could be repaired at Ford dealers. Then, when Burzlaff had problems with his vehicle and asked Thoroughbred for help, it told him to take his vehicle to a Ford dealer for warranty repairs. Burzlaff reasonably relied on that advice by going to Amato Ford. We cannot imagine that the Wisconsin courts would hold that Burzlaff lost his rights under the Lemon Law by relying on the manufacturer's instruction.

To counter the manifest injustice of stripping a consumer of his statutory rights because he followed the manufacturer's instructions, Thoroughbred points out that its theory would still leave a consumer with the protection of contractual warranties. Yet the Lemon Law was enacted precisely because manufacturers could delay or avoid remedies through costly litigation over the precise language of a contractual warranty. See *Hughes*, 542 N.W.2d at 150. To give effect to the Lemon Law, Wisconsin courts have rejected crabbed readings that narrow its reach. See, e.g., *Garcia v. Mazda Motor of America, Inc.*, 2004 WI 93, ¶¶ 11–12, 682 N.W.2d 365, 369 (Wis. 2004) (collecting Wisconsin Supreme Court cases to show that Lemon Law should be interpreted broadly).

The Lemon Law thus protects consumers who go to a repair facility authorized by the manufacturer. That is true whether the facility is a "manufacturer's authorized motor vehicle dealer" or not. With this understanding of the statute, the district court's instructions were right on target.

In light of the evidence and the parties' arguments, the district court needed to instruct the jury how the law would apply when the manufacturer told the consumer to have repairs done by someone other than a "manufacturer's authorized motor vehicle dealer." The instructions correctly distinguished the narrower requirements for notice (restricted to "the manufacturer or any authorized dealer") from the more flexible provision for repair at various facilities so long as the repairs are made on the manufacturer's behalf. They also focused the jury on the central issue of the case: whether Amato Ford was acting on Thoroughbred's behalf when repairing Burzlaff's vehicle, or whether he went there at his own risk and without Thoroughbred's authorization. The district

court's instruction explained accurately and clearly the is-
sues relevant to the Wisconsin Lemon Law claim.

   C.  *Sufficiency of the Evidence*

   In light of the foregoing discussion, Thoroughbred's chal-
lenge to the sufficiency of the evidence is easily resolved. We
reverse a jury verdict for insufficient evidence only if, taking
all evidence and reasonable inferences in favor of the pre-
vailing party, no rational jury could have come to the verdict
rendered. See *Woodward v. Correctional Medical Servs. of Illi-
nois, Inc.*, 368 F.3d 917, 926 (7th Cir. 2004).

   The Wisconsin Lemon Law permitted Burzlaff to seek
repairs at any repair shop acting on behalf of Thoroughbred,
not merely at authorized Stallion dealers. See Wis. Stat.
§ 218.0171(2)(a). Testimony at trial indicated that Burzlaff
received permission to go to a Ford dealer and that Amato
Ford repeatedly received instructions, parts, and full pay-
ment from Thoroughbred for repairs on Burzlaff's vehicle.
There was sufficient evidence to support the jury's verdict in
favor of Burzlaff on his Lemon Law claim.

   D.  *Submitting the Magnuson-Moss Claim to the Jury*

   Finally, Thoroughbred argues that the district court erred
by submitting the federal Magnuson-Moss claim to the jury.
It is undisputed that Burzlaff abandoned any request for
monetary damages under that statute before the case was
submitted to the jury. Thoroughbred contends that submit-
ting the claim to the jury amounted to "an invitation to jury
lawlessness." See *Eastern Trading Co. v. Refco, Inc.*, 229 F.3d
617, 621–22 (7th Cir. 2000) (unsupported defense should not
be submitted to jury, but error cannot be presumed to have
been prejudicial). To show that a trial court has committed a

reversible error by submitting a question to the jury, Thoroughbred must show (1) that the issue or claim was so weak that submission to the jury was error and (2) prejudice to the appellant through "'a showing that the jury probably was confused.'" *Tammi v. Porsche Cars North America, Inc.*, 536 F.3d 702, 708 (7th Cir. 2008), quoting *Eastern Trading*, 229 F.3d at 622.

The requirement of prejudice is critical. As a matter of sound case management, a trial court will often find it prudent to ask a jury to decide an issue even though one party may have a strong or even an ultimately successful argument why it should prevail on the issue as a matter of law. Sending such an issue to the jury will often avoid the need for a new trial if the trial court has not correctly predicted the appellate court's (or its own) later decision on the same issue. See *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405–06 (2006) (endorsing this procedure), quoting 9A Wright & Miller, *Federal Practice and Procedure* § 2533.

The court did not err in this case by submitting the Magnuson-Moss claim to the jury. The jury was instructed that the elements of the Magnuson-Moss claim were: (1) a defect, (2) covered by warranty, (3) a reasonable opportunity for the manufacturer to repair, and (4) the manufacturer's failure to repair within a reasonable time. Those elements overlapped substantially with the Lemon Law claim. The evidence was clearly sufficient to support a verdict as to liability, which was the only issue presented to the jury. The Magnuson-Moss claim also was not irrelevant because the court might have awarded equitable relief available only under federal law. Also, Burzlaff might still have recovered attorney fees and costs under his federal claim even if the jury had found

for Thoroughbred on the Lemon Law claim. See 15 U.S.C. § 2310(d)(2). The availability of equitable relief is relevant even though Burzlaff did not specifically request it beyond the generic prayer for "all such other relief as the Court deems just and equitable" in his complaint. The district court should award the prevailing party any relief to which he is entitled, whether or not he has asked for it in his complaint. See Fed. R. Civ. P. 54(c).

Even if it had been an error to submit the Magnuson-Moss claim to the jury, which it was not, Thoroughbred also failed to show prejudice in the form of jury confusion or otherwise. The special verdict form kept the questions on the Wisconsin Lemon Law separate from those on the Magnuson-Moss Act. Our decision in *Tammi v. Porsche Cars North America, Inc.*, 536 F.3d 702 (7th Cir. 2008), provides a useful comparison. Porsche challenged an instruction that mixed three issues together, making it difficult to tell if the two issues unsupported by evidence had influenced a permissible finding on the third issue. We affirmed, nevertheless, because jury confusion remained only a possibility and because Porsche could have mitigated any confusion by requesting separate questions on the special verdict but did not. *Id.* at 708–09.

In this case, the district court properly presented the two claims as distinct inquiries. Thoroughbred thus had the benefit of separate questions like those that Porsche should have requested in *Tammi*. We see no serious prospect of jury confusion, let alone a probability. See *Eastern Trading Co.*, 229 F.3d at 622. The submission of the Magnuson-Moss claim to the jury was neither error nor prejudicial.

The judgment of the district court is AFFIRMED. Burzlaff may pursue a supplemental award of appellate attorney fees before the district court.