In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 19-1760 & 19-1872

FABICK, INC.,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*

JFTCO, INC.,

*Defendant-Appellee, Cross-Appellant.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 16-cv-00172 — **William M. Conley**, *Judge.*

_____

ARGUED NOVEMBER 5, 2019 — DECIDED DECEMBER 9, 2019

_____

Before FLAUM, ROVNER, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* Two non-competing Midwestern companies operated by brothers used marks containing the family name, Fabick. The owner of the registered mark (or "senior user") (Fabick, Inc., or "FI"), a small manufacturer of sealants, sued the "junior user" (JFTCO, Inc.), a larger distributor of Caterpillar equipment, for trademark infringement. In a mixed verdict, a jury found that JFTCO had violated the

Lanham Act but had not committed common law infringement. FI sought an order permanently enjoining JFTCO from using the name "Fabick," but the district court entered limited injunctive relief requiring that JFTCO issue, for five years, disclaimers clarifying that it is not associated with FI.

Both parties appealed. FI complains that the district court erred in setting remedies: it should have entered a broad permanent injunction against JFTCO, and further should have allowed FI to recover JFTCO's profits. JFTCO, in its counter-appeal, seeks reversal of the jury's finding that it violated the Lanham Act based on an allegedly erroneous jury instruction and the district court's refusal to overturn the jury's verdict as a matter of law.

We now affirm on each issue.

## I. Background

FI is a Wisconsin corporation, based in Madison, dealing in protective coatings and sealants for various uses. JFTCO is a Delaware corporation and wholly owned subsidiary of the John Fabick Tractor Company, a Caterpillar equipment dealer based in Missouri. Both companies operate in Wisconsin and the Upper Peninsula of Michigan (the "UP").

This story of clashing family businesses begins with John Fabick, the founder of multiple business concerns operating throughout the Midwest. In 1982, his eponymous firm (the John Fabick Tractor Company, which used various marks including the word "Fabick" throughout its history) purchased two existing Caterpillar equipment dealerships serving Wisconsin and the UP. John intended for his son Joseph Fabick, Sr. (Joe Sr.) to operate the dealerships. Joe Sr. moved to Wisconsin and founded FABCO, selling new and used Caterpillar

machines, vehicles, attachments, and parts. In 2001, Joe Sr.'s son Jeré took over FABCO, which continued to operate Caterpillar dealerships until 2015. For over a decade, FABCO primarily used a mark reading "FABCO CAT," highlighting its affiliation with Caterpillar.

FI began as a subsidiary of FABCO and was incorporated in 1993. Its core business concerned spray-on sealants for use in the beds of pickup trucks and similar vehicles. Another of Joe Sr.'s sons, Joseph "Jay" Fabick, Jr., worked at FI. Apparently, tensions between the brothers Jeré and Jay became untenable and, in 1997, Jay's employment was terminated. His severance package included taking over FI (then primarily owned by FABCO) as its sole owner. FI and FABCO then operated independently, without apparent incident, for several years.

In 1994, while still a subsidiary of FABCO, FI filed a trademark application and a service mark application with the U.S. Patent and Trademark Office for the mark "FABICK," for "polyurethane-based and polyurea-based sealers and protectants to be applied as a coating to hard or flexible surfaces." The service mark was granted in 1995 and the trademark in 1997. FI has used several logos featuring the "Fabick" mark.

The dispute at hand was spurred by FABCO's sale to a newly formed subsidiary of the John Fabick Tractor Company, called JFTCO, in 2015. Having taken over FABCO's operations, JFTCO began operating as the exclusive Caterpillar dealer in Wisconsin and the UP, using the trade name "Fabick CAT." JFTCO engaged in an extensive rebranding effort under the Fabick CAT identity. FI claims that this rebranding began a long period in which customers were confused, including those who called FI seeking JFTCO and misdirected

checks between the companies. FI complained that as a small company with minimal advertising, its identity was being overwhelmed by JFTCO (which extensively advertised, including at major sporting events).

FI sued JFTCO in March 2016; its operative complaint alleged (among other charges) that JFTCO committed federal trademark infringement under the Lanham Act and at common law. The case eventually went to trial. Certain pretrial holdings, the jury verdict itself, and posttrial decisions are now on appeal. The relevant district court decisions are as follows.

At summary judgment, JFTCO argued that FI should not be allowed to seek monetary damages because, prior to trial, it had not put forth evidence of damages due to the alleged infringement. The district court largely disagreed, noting that it would be possible for FI to prove up multiple categories of monetary damages, such as recompense for employee time spent addressing confused customers or harm to goodwill. The district court did agree, however, that FI could not seek JFTCO's profits as damages:

> While plaintiff states in its opposition brief that a defendant's profits may be awarded[,] it fails to develop any theory as to why such an award would be appropriate here, much less evidence supporting its award. On the contrary, as already noted in discussing plaintiff's reverse confusion theory, the court is hard-pressed to understand how defendants were unjustly enriched by consumers assuming that Fabick's sealants and coatings business is the same or related to JFTCO's business.

Both sides presented their cases at trial. JFTCO argued in part that by virtue of its association with the John Fabick Tractor Company's longstanding use of a "Fabick" mark, the jury should find it established continuous prior use of the mark, a defense showing that it, and not FI, first used and was the original holder of the "Fabick" mark.

At the close of evidence, the district court instructed the jury on the charges. In discussing Lanham Act liability, the judge diverged from strict adherence to Seventh Circuit pattern instructions, and provided the following element: "[D]efendant JFTCO used the FABICK mark in a manner that is likely to cause confusion as to the source or origin of plaintiff's product **or that plaintiff has somehow become connected to JFTCO**." (additional language bolded; *cf.* Seventh Circuit Pattern Jury Instruction 13.1.2).

The district court based its modification to the instructions on its reading of the caselaw, namely *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992), which described a case of reverse trademark confusion: "The public comes to assume that the senior user's products are really the junior user's or that the former **has become somehow connected to the latter**. The result is that the senior user loses the value of the trademark …." *Id.* (emphasis added) (quoting *Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 964 (6th Cir. 1987)).

The jury returned a mixed verdict. It found JFTCO liable for federal trademark infringement and rejected JFTCO's defenses, including prior use. The jury also rejected FI's common law infringement claim.

After trial, JFTCO sought judgment as a matter of law in its favor and FI sought a permanent injunction against JFTCO. FI argued that because it prevailed on its Lanham Act claim, the district court should permanently enjoin JFTCO from using the name "Fabick" as a part of its business in any way. The district court denied JFTCO's motion for judgment as a matter of law and denied FI the requested permanent injunction. Instead, the district court ordered JFTCO to provide multiple notices and disclaimers:

- To defendant's employees on the intranet and on reference cards at each reception desk … for a period of five years from the date of this order. Specifically, defendant's employees are to be regularly reminded to refer questions about Fabick, Inc., or its products and services to Fabick, Inc., including providing its phone number and address, in response to internet and telephone inquiries.

- To defendant's customers in an insert with invoices and on all invoices … for a period of five years from the date of this order.

- To defendant's vendors in an insert with all purchase orders … for a period of five years from the date of this order.

- To the public on defendant's websites … for a period of five years from the date of this order.

- To plaintiff's customers and vendors in the form to be drafted by plaintiff and approved by defendant to be mailed once per year for three years ….

FI appealed; JFTCO responded and cross-appealed.

## II. Discussion

We first address JFTCO's arguments: (1) that the district court's modification of the pattern jury instruction was inappropriate, (2) that the district court should have entered judgment for JFTCO based on its prior use defense as a matter of law, and (3) that the district court should have found no likelihood of confusion as a matter of law. We then turn to FI's arguments about its remedies: that it should have been allowed to seek JFTCO's profits and should have been awarded a sweeping permanent injunction.

As an initial matter, it may be helpful to briefly discuss the theory of "reverse trademark confusion" under which FI prevailed on its Lanham Act claim. The typical trademark case involves a well-established senior user pursuing later infringers; think of a luxury fashion house suing the purveyors of counterfeit handbags, or an NFL team suing a small manufacturer of goods bearing the team's logo. Less common, but still actionable under the Lanham Act, are reverse confusion cases. There, the senior user is small and perhaps little-known, and the larger junior user threatens not to steal the goodwill of the smaller brand but to overwhelm its market identity.

> Reverse confusion occurs when a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user. In such a case, the junior user does not seek to profit from the good will associated with the senior user's mark. Nonetheless, the senior user is injured because [t]he public comes to assume that the senior user's products are really the junior user's or that the former has become somehow connected to the latter. The result is that the

> senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.

*Sands*, 978 F.2d at 957 (citation omitted).

### A. Jury Instructions

"We review a district court's choice of jury instruction de novo when the underlying assignment of error implicates a question of law." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 835 (7th Cir. 2016). "In crafting jury instructions, however, the district court is afforded substantial discretion, and we will reverse only if it failed to state the law completely and correctly and the error caused prejudice." *Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d 841, 846 (7th Cir. 2014).

As described above, the district court provided the following instruction to the jury, with additions to the Seventh Circuit pattern instruction in bold: "[D]efendant JFTCO used the FABICK mark in a manner that is likely to cause confusion as to the source or origin of plaintiff's product **or that plaintiff has somehow become connected to JFTCO**."

JFTCO argues that the district court provided an "erroneous instruction" to the jury, under which "the jury could find a likelihood of confusion not only based on confusion as to the source of Appellant's products and services, but also based on any mistaken belief 'that plaintiff has somehow [become] connected to JFTCO.'"

The district court considered this issue in its ruling on jury instructions during trial. FI had proposed the additional language based on the law as expressed in *Sands*, 978 F.2d at 957,

and the district court agreed it was proper to include because FI based its claims on reverse confusion.

JFTCO argues that the instruction runs afoul of this Court's ruling in *Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, where we stated that "general confusion 'in the air' is not actionable. Rather, only confusion about 'origin, sponsorship, or approval of … goods' supports a trademark claim." 763 F.3d 696, 701 (7th Cir. 2014) (quoting 15 U.S.C. § 1125).

But in the context of the entire jury instruction below, the jury could not have been under the impression that "general confusion in the air" between the two parties would create liability. The instructions included the following:

> The purpose of trademark law is to prevent confusion among consumers about the source of products and/or services and to permit trademark owners to show ownership of their products and/or services and control their product's and/or service's reputation. Plaintiff claims that defendant infringed plaintiff's FABICK trademark and service mark for polyurethane-based and polyurea-based sealers and protectants to be applied as a coating to hard or flexible surfaces by JFTCO's use of the FABICK marks in commerce in Wisconsin and the Upper Peninsula of Michigan in a manner that allegedly causes a likelihood of confusion as to the origin or source of the plaintiff's goods or services or that plaintiff has somehow become connected to JFTCO. …

To succeed on its claim that defendant infringed plaintiff's trademark and service mark, plaintiff must prove by a preponderance of the evidence that defendant used the FABICK mark in a manner that is likely to cause confusion or mistake as to the source or origin of plaintiff's product or that plaintiff has somehow become connected to JFTCO. …

Plaintiff must prove a likelihood of confusion among a significant number of people who buy or use, or consider buying or using, the products or services or similar products or services.

In deciding this, you should consider the following factors:

Whether the overall impression created by defendant's use of the FABICK marks is similar to that created by plaintiff's trademark in appearance or sound.

Whether defendant and plaintiff use the FABICK marks on the same or related products or services.

Whether plaintiff's and defendant's products or services are likely to be sold in the same or similar stores or outlets, or advertised in similar media.

The degree of care that purchasers or potential purchasers are likely to exercise in buying or considering whether to buy the product or ser-

vice (this may depend on the level of sophistication of potential buyers of the product or service and the cost of the product or service).

The degree to which the consuming public recognizes FABICK as an indication of origin of defendant's goods or services.

Whether defendant's use of the trademark or service mark has led to instances of actual confusion among purchasers or potential purchasers about the source or origin of plaintiff's products or services, however, actual confusion is not required for finding a likelihood of confusion.

In light of these detailed instructions, we cannot conclude that the district court "failed to state the law completely and correctly" or that any alleged error caused prejudice. When read in context, including their close proximity (all of the above quotations appear within about two pages of the written instructions), the district court's language regarding whether "plaintiff has somehow become connected to JFTCO" clearly refers to the parties' products and/or services, not an impermissibly vague "general confusion" in the ether. As such, the jury instructions are not reason to overturn the verdict.

### B. Judgment as a Matter of Law

JFTCO appeals the district court's denial of its motion for judgment as a matter of law, and specifically contends that (1) its prior use defense should have prevailed and (2) no reasonable jury could have found that JFTCO's use of a "Fabick" mark caused a likelihood of confusion. We review denials of

a motion for judgment as a matter of law de novo, viewing evidence in the light most favorable to the non-moving party. *Palmquist v. Selvik*, 111 F.3d 1332, 1343 (7th Cir. 1997). "In applying this de novo standard of review, we evaluate whether any reasonable jury could have reached the same conclusion." *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 754 (7th Cir. 2002).

### 1. JFTCO's Prior Use Defense

JFTCO's motion for judgment as a matter of law was predicated on a prior use defense, arguing that JFTCO, not FI, was actually the senior user of the mark (which would provide a complete defense to the Lanham Act infringement claim). "[A] trademark application is always subject to previously established common law trademark rights of another party." *S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665 (7th Cir. 2016). To establish this defense, "a party must show first, adoption, and second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Id.* at 666 (citations and internal quotation marks omitted).

JFTCO claims that it easily met the standard for establishing prior use under 15 U.S.C. § 1115(b), which it describes as requiring only that JFTCO or a party in privity with it: (1) used the trademark before FI applied for its registration, (2) "continuously used the trademark up until trial at the geographic region at issue," and (3) began using the mark without knowing FI was also doing so. JFTCO presented extensive evidence to both this Court and the district court of the John

Fabick Tractor Company's past use of a mark reading "Fabick." It is possible that a reasonable jury may have found continuous prior use established.[1]

But JFTCO's evidence is not so overwhelming as to carry the day on appeal, where it must show that, "viewing evidence in the light most favorable" to FI, no reasonable jury could have concluded JFTCO failed to show continuous prior use of the mark in Wisconsin and the UP. As the district court noted, FI cast doubt on JFTCO's evidence of such use, and it identified multiple instances where FI successfully poked holes in the defense and upon which a reasonable jury could have rejected a prior use finding. FI introduced testimony: questioning John Fabick Tractor's proof of sales in Wisconsin and the Upper Peninsula; noting that even if sales could be established in a particular time frame it did not follow that the Fabick mark was identified with the company; suggesting that any sales concluded were few in number (potentially as low as one unit per year in an 80,000 square mile region); and demonstrating the little evidence of any advertising prior to 1994. Finally, the district court noted that FI persuasively argued to the jury that sales under the "Fabick" mark were likely dwarfed by sales under "FABCO," thereby attenuating the identification of "Fabick" with John Fabick Tractor.

---

[1] In their briefs, the parties dispute whether this Court should adopt a bright-line rule that the parent corporation's use of a mark should not inure to the benefit of its subsidiary. There is no need to reach this question as we must affirm the district court if *any* reasonable jury could have determined JFTCO had not established its prior use defense.

Moreover, a reasonable jury could have found that the evidence presented by JFTCO did not establish *continuous* use of the Fabick mark *in* the region sufficient to establish senior holder status. "Only active use allows consumers to associate a mark with particular goods and notifies other firms that the mark is so associated." *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992). For example, the jury may have believed any or all of the following: that historical photos of equipment showing a "Fabick" decal did not prove that such decals were continuously used within Wisconsin and the UP; that perhaps one invoice a year bearing the mark to a single customer in the region was insufficient; that no documentary evidence verified sales in the UP prior to 2002; and that mid-century era advertising with the logo did not prove such advertising was continuous through 1994 and beyond.

JFTCO argues that the "holes" poked by FI are minimal compared to the evidence it presented in favor of the defense, but this ignores the standard of review weighing heavily in favor of the non-movant. We cannot hold, viewing all evidence in the light most favorable to FI, that no reasonable jury could have been convinced by the doubts cast over JFTCO's prior use claim.

### 2. *Likelihood of Confusion*

JFTCO also appeals the denial of its motion for judgment as a matter of law on the basis that "no reasonable jury could find a likelihood of reverse confusion" based on the evidence presented in the case. According to JFTCO, the marks at issue are not similar, the parties' products and services are not similar, the area and manner of use of the marks are not concurrent, customers of the parties exercise a high degree of care,

the "Fabick" mark is weak, and there was insufficient evidence of actual confusion as to the source or origin of FI's products or services. *See Sands*, 978 F.2d at 959 (listing factors in analyzing likelihood of confusion).

It is unnecessary to address each of these points because, again, we must affirm if any reasonable jury could have found a likelihood of confusion between the parties' goods and services. Despite JFTCO's protests, there are abundant bases in the record to uphold the jury's finding of a likelihood of confusion. These include the use of the same relatively unusual surname as the mark's primary descriptor, the fact that it is reasonable to assume FI's sealants could have been used on the type of equipment sold by JFTCO, and, most importantly, the 240+ recorded instances of actual confusion demonstrated by FI (primarily customers trying to reach JFTCO but contacting FI instead). Taking the factors as a whole, the massive amount of undisputed evidence FI presented showing that hundreds of customers confused the two parties (based on JFTCO's "Fabick CAT" advertising) prevents us from overturning the jury's verdict on this point.

JFTCO contends that most of the confusion seemed to be among its own customers mistakenly contacting FI. Because this is a reverse confusion case, JFTCO argues, the focus should be on FI's customers mistakenly calling JFTCO. Regardless of whether this is the case (and JFTCO fails to cite any case making such a holding), FI identified multiple joint customers of the parties who actually confused them. Because a reasonable jury could have found against JFTCO on the likelihood of confusion, we affirm the judgment of the district court.

**C. Remedies**

FI appeals two decisions of the district court: (1) the ruling that FI could not seek JFTCO's profits and (2) the imposition of limited injunctive relief instead of a permanent, sweeping injunction against JFTCO's use of "Fabick" as a mark. Neither argument prevails.

### 1. *JFTCO's Profits*

At summary judgment, the district court ruled that FI could not seek JFTCO's profits as a remedy for trademark infringement. "We review the district court's grant of summary judgment de novo and draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Harmon v. Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013).

In rejecting FI's requests for JFTCO's profits, the district court noted that "plaintiff has offered nothing to support such an award" and had failed to "develop any theory as to why such an award would be appropriate here." Because FI was proceeding on a reverse infringement theory, the district court stated it was "hard-pressed to understand *how* defendants were unjustly enriched by customers assuming that [FI's] sealants and coatings business is the same or related to JFTCO's business." FI appeals, arguing that the Lanham Act explicitly allows the recovery of a defendant's profits and that recovery of profits should be the assumed remedy where infringement is found.

Tellingly, FI lacks any citations, to the Seventh Circuit or otherwise, mandating such a result. This likely is because district courts are granted broad discretion in fashioning remedies for trademark infringement; the district court here was

well within its rights to find at summary judgment that FI had failed to make a case for getting JFTCO's profits.

As noted, the Lanham Act does contemplate awarding defendants' profits to prevailing plaintiffs. "When a violation of any right of the registrant of a mark … shall have been established[,] the plaintiff shall be entitled, subject to … the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Not only does § 1117(a) qualify the availability of profits as "subject to the principles of equity," but further explains that "[i]f the court shall find that the amount of the recovery based on profits is [] excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id.* As the district court found that no evidence (such as bad faith or unjust enrichment) supported an award of profits, it was consistent with the statutory language to deny FI such an award.

Indeed, the authorities FI cites elsewhere hold that reverse confusion cases present meager justification for profit awards. *See, e.g.*, *Sands*, 978 F.2d at 963 (stating that "[w]e do think, however, that the evidence of bad faith here is marginal at best. Further, this is not a case where the senior user's trademark is so well-known that the junior user's choice of a confusingly similar mark, out of the infinite number of marks in the world, itself supports an inference that the junior user acted in bad faith," and reversing award of profits); 4 McCarthy on Trademarks § 23:10 ("Because in a reverse confusion case the infringer is not seeking to take away the plaintiff's customers through confusion, awarding the plaintiff the profits of the infringer is not a proper basis for recovery."). The

district court's decision that FI was not eligible to recover JFTCO's profits comports with the facts of this case and the law generally.

   2.  *Injunctive Relief*

Having prevailed on its federal trademark claim, FI sought a broad, sweeping injunction that would have prevented JFTCO from using "Fabick" in any business context. The court denied this request, and instead entered limited injunctive relief requiring that JFTCO, for five years, issue disclaimers clarifying that it is a different company from FI. Under the Lanham Act, the district court may "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a trademark. 15 U.S.C. § 1116(a). We review the district court's denial of a permanent injunction for an abuse of discretion. *3M v. Pribyl*, 259 F.3d 587, 597 (7th Cir. 2001). "Factual determinations are reviewed for clear error and legal conclusions are given de novo review. A factual or legal error may be sufficient to establish an abuse of discretion." *Id.*

The district court based its decision on two primary points: that Jay Fabick, on behalf of FI, applied for the "Fabick" trademark in 1994 while aware of the John Fabick Tractor Company's previous use of a such a mark, and the nature of the harm claimed by FI, lacking much evidence at all of harm to its reputation, lost sales, or similar damages. Instead, FI presented a great deal of evidence of people confusing it for JFTCO, but not otherwise causing harm, irreparable or otherwise. Checks were ultimately re-directed to their proper destination, and there was not significant evidence of lost manpower to resolve the confusion. FI argued below and argues now that the reverse infringement committed by JFTCO

should automatically lead to a finding of irreparable harm and, thus, a permanent injunction. The law, however, is not as forceful as FI would have it. The Lanham Act places broad discretion in the district court to fashion an appropriate remedy.

FI primarily relies on *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, which shares some factual elements with the instant case. 846 F.2d 1079 (7th Cir. 1988). A plush toy manufacturer created and marketed a line of "International Kennel Club" stuffed dogs, despite the earlier existence and mark of the International Kennel Club of Chicago. Following the publication of multiple advertisements in national magazines, "IKC officials began receiving telephone calls (at a rate of about one per day), letters, and personal inquiries from people expressing confusion as to the plaintiff's relationship to the International Kennel Club stuffed dogs." *Id.* at 1082. The district court entered a preliminary injunction against the toymaker, finding a strong likelihood of confusion between the parties was likely to occur absent relief. This Court affirmed that decision, holding that

> Although as the defendants point out, the plaintiff failed to establish that people stopped going to the plaintiff's shows or that it lost vendors or advertisers as a result of the defendants' use of the International Kennel Club name, we have never recognized this as the controlling legal standard. To the contrary, we have held that "the owner of a mark is damaged by a later use of a similar mark which place[s] the owner's reputation beyond its control, *though no loss in business is shown*."

*Id.* at 1091 (quoting *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 276 (7th Cir. 1976)). FI argues that its situation is analogous: Although it cannot show a loss of business, the damage is in the loss of control of its mark, and a full injunction should issue.

The district court, however, distinguished *International Kennel Club*. "In that case[,] the plaintiff presented evidence of damages to its goodwill, including customers and other vendors expressing concerns about the apparent affiliation between the plaintiff, an organization devoted to purebred dog shows, and the infringing defendant, who sold stuffed toy dogs." FI is correct that irreparable harm can be shown even without showing lost profits, but is wrong to suggest that district courts do not have the discretion to compare and evaluate different types or degrees of non-monetary harm. The district court recognized that FI was, indeed, harmed by the infringement even though it could not show any loss of business or reputation to date, but it was appropriate for the court to evaluate the nature of the infringement and harm in crafting its injunctive remedy.

While a permanent injunction may be the typical remedy for trademark infringement, it is by no means automatically applied. *See* 5 McCarthy on Trademarks § 30:1. "In trademark cases, the scope of the injunction to be entered depends upon the manner in which plaintiff is harmed, the possible means by which that harm can be avoided, the viability of the defenses raised, and the burden that would be imposed on defendant and the potential effect upon lawful competition between the parties." *Id.* § 30:3. This is a reverse infringement case, involving formerly related entities, who do not compete, disputing the use of a shared family name, and concerning a

small number of customers of the senior user. In such a circumstance, it was reasonable for the district court to determine that a permanent injunction barring JFCTO from ever using its owner's family name in a business context was overkill. The ordered disclaimers are reasonably designed to notify any and all of the people whose confusion could cause an issue for FI for five years. It is tailored to remedy the infringement; it does not constitute an abuse of discretion.

A family dispute involving a historic German restaurant is instructive. In *Berghoff Rest. Co., Inc. v. Lewis W. Berghoff, Inc.*, the famed gasthaus sued its erstwhile employee, Lewis, who had been terminated from the family business and then opened his own eponymous restaurant in suburban Elgin. 499 F.2d 1183 (7th Cir. 1974). The district court found in favor of the prominent eatery but denied the Berghoff the full permanent injunction it sought.

> While recognizing that plaintiff's goodwill was established through effort and labor and deserving of some consideration despite the fact that defendant's surname was identical, the court noted that the individual defendant had previously contributed to the Berghoff name, thus requiring a delicate balancing of the equities. Instead of affording complete relief to plaintiff, the court fashioned an injunction requiring defendants to use the individual defendant's given name 'Lewis' with his surname in operating a restaurant business. 'Lewis' was to be in the same size letters as 'Berghoff.' Except for one billboard and the sign above the Elgin restaurant, defendants were directed to use

> the disclaimer 'Not affiliated with the Berghoff Restaurants of Chicago' in their advertising and on the front of their menus. The individual defendant was ordered to file a report with the district court 60 days after the entry of the decree showing how compliance was effected.

*Id.* at 1185. This Court affirmed the district court's decision to apply a limited injunction, holding that "[t]he Lanham Act did not require the court below to restrain all use of the 'BERGHOFF' name." *Id.* at 1185–86; *see also* 5 McCarthy on Trademarks § 30:3 ("In litigation between persons of the same personal name using the name as a trademark, it is common practice to balance the rights by a limited injunction which, while not preventing the use of a personal name altogether, requires … disclaimers."). Considering that we have held limited injunctions to be acceptable in traditional infringement cases, they may be even more appropriate in the reverse confusion context, where no brand has sought to steal the goodwill of another.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.