# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 01-1744 and 01-2119

XU LIU,

*Plaintiff-Appellant,*

*v.*

PRICE WATERHOUSE LLP and
COMPUTER LANGUAGE RESEARCH, INC.,

*Defendants/Third-Party Plaintiffs-Appellees,*

*v.*

XIAOMEI YANG,

*Third-Party Defendant-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 3093—**James F. Holderman**, *Judge.*

ARGUED NOVEMBER 28, 2001—DECIDED SEPTEMBER 10, 2002

Before HARLINGTON WOOD, JR., KANNE, and ROVNER,
*Circuit Judges.*

KANNE, *Circuit Judge.* A jury found against Xiaomei
Yang and Xu Liu on various copyright-infringement,
breach-of-contract, breach-of-fiduciary-duty, and conver-
sion of property claims. Yang and Liu now appeal. First,
Yang and Liu argue that the district court erred in deny-
ing their renewed motion for judgment as a matter of law

or for a new trial and that it erred when it allowed Price Waterhouse and Computer Language Research, Inc.'s ("CLR") economic expert to introduce the results of telephone surveys as fact testimony. Further, Yang and Liu contend that the district court abused its discretion when it granted Price Waterhouse and CLR's motion for remittitur and when it denied Yang's motion for prejudgment interest and costs. We affirm the judgment of the district court.

## I. Background

Price Waterhouse's Tax and Technology Group developed and marketed a tax preparation software package, the Tax Management System ("TMS"). The TMS software was initially a DOS-based program. But in 1994, Price Waterhouse hired Patrick J. McNerthney to develop a Windows® version (8.0) of the TMS software. McNerthney created a subprogram called RevUp32, which interfaced with the Windows® TMS program to access files created with the DOS-based program. Price Waterhouse owned the copyrights pertaining to both the TMS software and the RevUp32 program until it sold most of its TMS business assets to CLR in December 1995.

In March 1995, Yang, an employee acting on behalf of Price Waterhouse, attempted to locate computer programmers in China who could increase the speed of the RevUp32 program in return for a fee and a commitment by Price Waterhouse to outsource future projects to China. Yang contacted several Chinese programmers and eventually selected the Sichuan Sky Company Limited (the "Sky Company") to do the work. Shortly thereafter, Yang became concerned that Price Waterhouse and the Sky Company might exclude her from future projects. To alleviate Yang's fears, Stephen Desmond, Price Waterhouse's partner in charge of the Tax Technology Group, prepared a letter dated May 22, 1995, stating that if Yang success-

fully met the objectives of the "China Project," Price Waterhouse would appoint her to lead future ventures in China.

Yang and Gerard Niles, Price Waterhouse's Chief Development Officer and Senior Vice President of the Tax Technology Group, subsequently worked out the details of the arrangement between Yang and Price Waterhouse and set forth their agreement in a written letter dated June 7, 1995. The letter, signed by Niles, stated in pertinent part:

> Price Waterhouse LLP agrees to pay $25,000 (twenty-five thousand dollars) for each 25% increase in TMS speed resulting from work on the RevUp. After the initial 25% improvement is achieved, payment will be made in $1,000 increments for each percentage increase. For example, if the speed is increased by 49%, Price Waterhouse will pay $49,000.00.
>
> . . .
>
> Price Waterhouse will be given 30 days upon receipt of the object code to perform acceptance testing. If Price Waterhouse discovers problems, the consultants agree to resolve any and all issues on a timely basis. When issues are resolved, the consultants will give Price Waterhouse an additional 30 days upon receipt of the revised object code to perform acceptance testing. Upon successful completion of acceptance testing and verification of the speed increases, Price Waterhouse will pay the aforementioned amount. . . . The Tax Technology Group will supply the source code for the RevUp . . . . It is clearly understood that the source code is the sole property of Price Waterhouse and Price Waterhouse gives no authority, implied or otherwise, to distribute or copy this source code in any way. Upon completion of the project, ALL source code will be given back to Price Waterhouse.

> If this project is successful, Price Waterhouse will consider the same consultants as strong candidates for future development projects.

Price Waterhouse then disclosed to Yang the source code to the RevUp32 program.[1] In turn, Yang disclosed the RevUp32-program source code to the Sky Company programmers. Using the original source code to the RevUp32 program, the Sky Company programmers successfully increased the speed of the RevUp32 program by 264%.

Upon completion of this newer, faster RevUp32 program (the "China RevUp32 program"), Yang sent the object code to the "China RevUp32 program" to Price Waterhouse.[2] Although Yang was willing to turn over the object code to the China RevUp32 program, she refused to turn over the new source code unless Price Waterhouse guaranteed her future work in China, in addition to paying her the $264,000 she was due under the June 7, 1995 letter agreement. Price Waterhouse, however, refused to make any further guarantees to Yang and refused to pay Yang the $264,000 until the source code for the China RevUp32 program was turned over to Price Waterhouse. Subsequently, the Sky Company programmers asserted an ownership interest in the copyrights pertaining to the China RevUp32 program. They then proceeded to assign their asserted copyrights to Liu, Yang's daughter. Yang then registered the China-RevUp32-program copyrights in Liu's name.

---

[1] The source code of a program is its operating instructions in a format that a computer programmer can read and use to maintain and revise a program.

[2] An object code is operating instructions in a format that can be read by a computer, as opposed to the source code, which, as explained above, is read by a computer programmer.

In December 1995, CLR purchased the TMS software business from Price Waterhouse and began selling the TMS software, which incorporated the China RevUp32 program. Price Waterhouse and CLR then contacted Patrick McNerthney, the programmer who had authored the original RevUp32 program, and asked him to attempt to increase the speed of his original RevUp32 program. Because McNerthney was familiar with the original program, he was able to enhance the RevUp32 program for CLR in several weeks. Then, starting in November 1996, CLR substituted McNerthney's faster RevUp32 program for the China RevUp32 program in their TMS software.

In April 1997, Liu filed a suit for copyright infringement against Price Waterhouse and CLR for allegedly infringing her copyrights in the China RevUp32 program by selling the TMS software, which incorporated the China RevUp32 program. Price Waterhouse and CLR denied infringement and filed a counterclaim against Liu for copyright infringement, alleging that Liu infringed their copyrights in the China RevUp32 program by filing a copyright registration in her name. Price Waterhouse and CLR also filed a third-party complaint against Yang, alleging contributory copyright infringement, breach of fiduciary duty, conversion of property, and trade secret misappropriation.

The above-recited facts were adduced during a ten-day trial. Subsequently, the jury determined that Price Waterhouse and CLR validly owned the copyrights in both the original RevUp32 program and the China RevUp32 program. The jury further found that Liu had infringed these copyrights by asserting an ownership interest in the China RevUp32 program, that Yang had contributed to Liu's infringement, and that Yang breached her fiduciary duty to Price Waterhouse and had converted property. Additionally, Price Waterhouse was found to have

breached the June 7, 1995 letter agreement by failing to pay Yang the $246,000 that was due to her. Further, Yang was found to have breached the same agreement by failing to turn over to Price Waterhouse the China-RevUp32-program source code upon completion of the China project.

In their answers to a series of special interrogatories, the jury found specifically that in the June 7, 1995 letter agreement, the parties intended that the copyrights pertaining to the China RevUp32 program would become the property of Price Waterhouse upon completion of the project and that the project was in fact completed. Further, the jury found that Yang was a Price Waterhouse employee while she worked in China and that therefore she was obligated to use her best efforts to protect Price Waterhouse's copyright interests. Additionally, the jury determined that Yang had not used her best efforts to protect the China RevUp32 program while she was employed at Price Waterhouse.

The jury awarded Price Waterhouse and CLR $200 in damages for Liu's copyright infringement and $200 in damages for Yang's contributory infringement. The jury also awarded Yang damages in the amount of $600,000 for Price Waterhouse's breach of contract. Liu and Yang then moved for judgment as a matter of law or a new trial pursuant to Rules 50(b) and 59, on the grounds that the Sky Company programmers never actually assigned their ownership interests in the China RevUp32 program copyrights to Price Waterhouse and thus, Liu is the true owner of the China RevUp32 program. The district court rejected Liu and Yang's argument and denied their motions. The district court then granted Price Waterhouse and CLR's motion for remittitur, reducing Yang's award from $600,000 to $264,000 on the grounds that the only evidence Yang presented to the jury on her breach-of-contract claim was that Price Waterhouse owed her $264,000 pursuant to the June 7, 1995 letter agreement.

Further, the court denied Yang's motion for prejudgment interest on her breach-of-contract claim and her motion for costs.

On appeal, Yang and Liu argue that the district court erred in denying their motion for judgment as a matter of law or for a new trial because Liu is the true owner of the China RevUp32 program and consequently neither she nor Yang could have infringed Price Waterhouse's copyrights. They contend that because the Sky Company programmers exclusively authored the China RevUp32 program, the ownership interest in the China RevUp32 copyrights vested in the programmers. Further, according to Liu and Yang, the June 7, 1995 letter agreement is not a valid transfer of copyright ownership from the Sky Company programmers to Price Waterhouse. Additionally, Yang and Liu contend that the district court abused its discretion in admitting hearsay testimony from Price Waterhouse and CLR's economic expert; that the district court abused its discretion in granting Price Waterhouse and CLR's motion for remittitur; and that the district court abused its discretion in denying Yang's motion for prejudgment interest and costs.

## II. Analysis

### A. Renewed Motion for Judgment as a Matter of Law or a New Trial

We review the denial of a post-trial motion for judgment as a matter of law *de novo* but view the evidence in a light most favorable to the nonmoving party. *See Am. Nat'l Bank & Trust v. Reg'l Transp. Auth.*, 125 F.3d 420, 431 (7th Cir. 1997). In applying this *de novo* standard of review, we evaluate whether any reasonable jury could have reached the same conclusion. *See id.* If we answer this question affirmatively, then we will not overturn the district court's denial of the motion. *See id.* With respect

to Yang and Liu's motion for a new trial, we will only overturn the district court's denial of this motion for an abuse of discretion. *See id.* Under this standard, "we shall not second-guess the decision of a trial judge that is in conformity with established legal principles and, in terms of its application of those principles to the facts of the case, is within the range of options from which one would expect a reasonable trial judge to select." *Id.* (quotation omitted).

Yang and Liu do not dispute that Price Waterhouse authorized Yang and the Sky Company programmers to produce a derivative work using the original RevUp32 program. Instead, Yang and Liu contend that contrary to the findings below, the intent of the parties is irrelevant to the question of who owns the copyrights in the derivative work. They assert that even if the parties *intended* that Price Waterhouse would own the copyrights in the derivative work, Price Waterhouse *by law* cannot own these copyrights because the derivative work's authors did not execute a written document assigning ownership of the derivative work to Price Waterhouse pursuant to 17 U.S.C. § 204(a). Section 204(a) provides that "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a).

Yang and Liu's reasoning is flawed. Price Waterhouse, as the owner of the copyrights in the original RevUp32 program, possesses the exclusive right to prepare derivative works from this original program. *See* 17 U.S.C. § 106(2); *Stewart v. Abend*, 495 U.S. 207, 220, 110 S. Ct. 1750, 109 L. Ed. 2d 184 (1990). Because Price Warehouse possesses such an exclusive right, in order for the Sky Company programmers to have lawfully prepared a de-

rivative work, the programmers needed authorization from Price Waterhouse to use its original program. *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088-89 (9th Cir. 1989). The June 7, 1995 letter agreement authorized Yang to recruit the Sky Company programmers to use its original work to prepare a derivative work. Because the trial court found that the language of the June 7, 1995 agreement was ambiguous, it was appropriate to look at the intent of the parties to determine the scope of the Sky Company programmers' authorization. The June 7, 1995 letter agreement stated that "[u]pon completion of the project, ALL source code will be given back to Price Waterhouse." Viewing this language in a light most favorable to Price Waterhouse and CLR, the license agreement provided that Price Waterhouse, not the Sky Company programmers, would obtain copyright ownership of the China RevUp32 program.

Further, obtaining copyright protection in the derivative work was beyond the scope of the permissible uses authorized by the June 7, 1995 letter agreement. *See* 1 NIMMER ON COPYRIGHT § 3.06, at 3-34.26 at 26(1) (2002) ("[T]he right to claim copyright in a noninfringing derivative work arises by operation of law, not through authority from the copyright owner of the underlying work. *Nonetheless, if the pertinent agreement between the parties affirmatively bars the licensee from obtaining copyright protection even in a licensed derivative work, that contractual provision would appear to govern.*") (emphasis added); *see also Gracen v. Bradford Exch.*, 698 F.2d 300, 303 (7th Cir. 1983) (stating that "[e]ven if [Gracen] was authorized to exhibit her derivative works, she may not have been authorized to copyright them").

Contrary to Yang and Liu's argument on appeal, because the Sky Company programmers never had any ownership interest in the copyrights in the derivative China

RevUp32 program, 17 U.S.C. § 204(a) is inapplicable. As the district court explained:

> While the Copyright Act makes authors of derivative works the presumptive owners of copyright rights in their contribution, it also allows parties to adjust those rights by contract. Here, the jury found that the parties to the letter agreement did just that—agreed that Price Waterhouse would hold the copyright in the derivative work. Because of the ambiguity in the letter agreement, it was necessary and proper for the jury to consider "the parties'" intent in entering into the letter agreement in order to determine the respective rights of Price Waterhouse, Yang and the subsequent authors of the derivative work, even though those subsequent authors, the Sky Company Programmers, did not sign the letter agreement.

Because the jury found that, pursuant to the June 7, 1995 letter agreement, the parties intended that Price Waterhouse would own the copyrights in the derivative work, we find no error in the district court's denial of Yang and Liu's motion for judgment as a matter of law and no abuse of discretion in the district court's denial of Yang and Liu's motion for a new trial.[3]

### B.  Motion In Limine to Exclude Expert Testimony

Next, Liu argues that we should reverse the district court's denial of her motion in limine to exclude the testimony of Price Waterhouse and CLR's accounting expert,

---

[3]  We do not need to reach the merits of Yang and Liu's second argument on appeal—that the district court erred in denying certain revised jury instructions regarding damages—as it relies upon a finding that Liu was the true owner of the copyright in the China RevUp32 program.

Julie Davis, on the issue of Liu's alleged damages due to Price Waterhouse and CLR's copyright infringement. We review a trial court's ruling on the admission of expert testimony for an abuse of discretion. *See Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 535 (7th Cir. 2000). However, we note that even if the district court abused its discretion in admitting Davis's expert testimony, such an error is not grounds "for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." FED. R. CIV. P. 61; *see also Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997) ("Disturbing the judgment of the district court on evidentiary grounds is necessary only if an erroneous ruling had a substantial influence over the jury.") (quotation omitted). Accordingly, we will not reverse a jury verdict if an erroneous admission of expert testimony is harmless; we recognize that an error is harmless if it did not contribute to the verdict in a meaningful manner. *See Jones v. Lincoln Elec. Co.,* 188 F.3d 709, 725 (7th Cir. 1999).

In the present case, Davis testified to the amount of damages Liu sustained on account of Price Waterhouse and CLR's alleged infringement of her copyrights. The jury, however, never actually reached this issue when determining their verdict because the jury found that neither Price Waterhouse nor CLR was liable to Liu for any damages for infringement, as neither party was found to have committed copyright infringement. Therefore, Davis's testimony was irrelevant to the jury's verdict. Thus, even if we were to assume that the district court did err in denying Liu's motion in limine, we would not disturb the judgment of the district court as Davis's testimony cannot be shown to have had any influence at all upon the jury's verdict.

### C.  Motion for Remittitur

Next, Yang argues that the district court's grant of Price Waterhouse and CLR's motion for remittitur should be reversed because she claims that she is entitled to excess damages above and beyond the $246,000 under several different theories of tort liability. "[A] jury has wide discretion in determining damages." *Am. Nat'l Bank & Trust*, 125 F.3d at 437. And a "trial judge may vacate a jury's verdict for excessiveness only when the award was 'monstrously excessive' or the award has 'no rational connection to the evidence.'" *DeBiasio v. Ill. Cent. R.R.*, 52 F.3d 678, 687 (7th Cir. 1995); *see also Frazier v. Norfolk & W. Railway Co.*, 996 F.2d 922, 925 (7th Cir. 1993). Here, the district court explained that the only evidence Yang submitted in support of her breach-of-contract damages was her invoice to Price Waterhouse for $246,000. Additionally, Yang failed to plead any allegations of tortious conduct; the jury was never instructed on the elements of any torts that Yang now argues support the jury's $600,000 verdict; and finally, Yang consented to jury instructions that limited her contract damages to $264,000. This last reason standing alone is sufficient to find against Yang on appeal. *See Jabat, Inc. v. Smith*, 201 F.3d 852, 857 (7th Cir. 2000) ("When parties do not object to jury instructions, these instructions generally become the law of the case.") (quotation omitted). Once the law of the case is settled, the parties can only argue that the jury did not properly apply the instructions to the facts. *See id.* Consequently, we find no error in the district court's determination that a portion of the jury's award was not rationally connected to the evidence.

### D.  Prejudgment Interest

Finally, Yang argues that under the Illinois Interest Act, 815 ILCS 205/2 (1998), she is entitled to prejudgment

interest on her breach-of-contract claim.[4] Here, the district court denied Yang prejudgment interest because Price Waterhouse had a good-faith dispute with Yang regarding ownership of the source code in the China RevUp32. Yang argues that it does not matter that there was a good-faith dispute over the source code. Rather, Yang asserts that as long as the amount she was owed was readily ascertainable, she is entitled to prejudgment interest.

A district court's decision to award or deny prejudgment interest will not be disturbed unless that decision constitutes an abuse of discretion. *See Singer Co. v. Skil Corp.*, 803 F.2d 336, 341 (7th Cir. 1986). Under the Illinois Interest Act, a creditor is entitled to receive a 5% per annum interest rate on all monies after they become due if they are being withheld by an unreasonable and vexatious delay of payment. 815 ILCS § 205/2. However, if payment is being withheld in good faith, because of a genuine and reasonable dispute, interest will not be awarded. *See Gen. Dynamics Corp. v. Zion State Bank & Trust Co.*, 427 N.E.2d 131, 134 (Ill. 1981). This good-faith exception recognized in *General Dynamics* has been limited by the Illinois appellate courts. In *Weidner v. Szostek*, 614 N.E.2d 879, 883-84 (Ill. App. Ct. 1993), the Illinois appellate court explained that when parties' contracts specifically provide for prejudgment interest on amounts past due, the good-faith exception set out in *General Dynamics* is inapplicable. However, when a prejudgment interest award is being claimed pursuant to a statute, then the good-faith exception set out in *General Dymanics*

---

[4] Yang also argues that the district court abused its discretion when it denied her motion for costs. Yang premises this argument on the assumption that we would find Liu to be the proper owner of the copyright in the China RevUp32 program. Because we made no such finding, there is no need to discuss this argument.

may apply. *See id.* Although the Illinois Supreme Court has not spoken directly to this issue, we believe that the Illinois appellate court's position is correct.

Here, Yang is claiming prejudgment interest pursuant to the Illinois Interest Act, 815 ILSC § 205/2. The parties themselves, however, never contemplated awarding prejudgment interest on amounts past due in their agreement. Thus, in this instance the *General Dynamics* good-faith exception could be applicable. Because Yang failed to turn over the source code pursuant to the June 7, 1995 letter agreement, we believe that the district court did not abuse its discretion in finding that payment was being withheld by Price Waterhouse in good faith because of a genuine and reasonable dispute between the parties and that therefore, Yang was not entitled to an award of prejudgment interest.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*