In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 20-1395

RICHARD BROOKS,

*Plaintiff-Appellant,*

*v.*

CITY OF KANKAKEE, ILLINOIS,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:17-cv-02265-CSB-EIL — **Colin S. Bruce**, *Judge.*

———————————

ARGUED DECEMBER 2, 2020 — DECIDED AUGUST 4, 2021

———————————

Before EASTERBROOK, RIPPLE, and ROVNER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Richard Brooks, an African American police officer, made statements on multiple occasions complaining that his employer, the City of Kankakee, Illinois, favored white officers. The City, viewing the statements as false and disparaging, issued a written reprimand letter to Mr. Brooks ordering him to stop making such statements and warning him that he faced discipline up to and including termination should he engage in further pub-

lic disparagement.

Mr. Brooks filed a complaint in the district court against the City alleging that it had retaliated against him, in violation of Title VII of the Civil Rights Act of 1964, by failing to promote him and by issuing to him a reprimand letter after he had engaged in protected activity. The City filed a motion for summary judgment. In response, Mr. Brooks attempted to introduce a new claim alleging that the City's promotional policies had a disparate impact on minority officers. The district court dismissed Mr. Brooks's disparate impact claim and granted summary judgment to the City on his retaliation by failure to promote claim. The court, however, denied summary judgment on Mr. Brooks's retaliation-by-reprimand claim, concluding that a genuine issue of material fact remained as to whether Mr. Brooks's statements constituted protected activity.

Mr. Brooks's retaliation-by-reprimand claim proceeded to trial, and a jury returned a verdict for the City. The court denied Mr. Brooks's motions for judgment as a matter of law. Mr. Brooks now appeals, contending that no reasonable jury could have found for the City and that his disparate impact claim was improperly dismissed. In the alternative, he argues that the district court misstated the law in its jury instructions and requests that we remand for a new trial. We now affirm the district court's judgment.

# I

## BACKGROUND

### A.

Mr. Brooks is an African American patrolman for the Kankakee Police Department. During the relevant period,

the Department consisted of about sixty-seven officers, which included twelve sergeants, five lieutenants, and a patrol commander, an investigations commander, a deputy chief, and a chief. Larry Regnier was Deputy Chief from 2000 to 2010, and then Chief from 2010 until May 1, 2016. Robin Passwater was Investigations Commander from 2009 to 2015, Deputy Chief from 2015 to early 2016, Acting Chief for a few months in 2016, and is currently a lieutenant for the Department.

**1.**

The Kankakee Police Department promotes officers to sergeant through a competitive examination process. The ranked results of the examination are publicly posted on what is colloquially called "the list."[1] Illinois state law requires that promotions be made from the three highest ranking candidates. *See* 65 ILCS 5/10-2.1-15. The Chief only may promote someone when a position becomes open. When a candidate is promoted off the list, the remaining candidates move up a spot. The list remains in effect until it is replaced by a new list. Relevant to this lawsuit are the 2011 List, issued November 14, 2011; the 2014 List, issued December 4, 2014; and the 2017 List, issued January 8, 2018.

Stanard and Associates is an independent company that prepared and administered promotional exams for the Department. In 2011 and 2014, a candidate's score was based on a written test of 100 multiple-choice questions (40%); an oral exam (30%); merit points (15%); and education, community

---

[1] R.27 at 5.

service, and seniority (5% each). The oral exam was graded by a panel consisting of two Department members and three members of outside police departments. Merit points were based on evaluations from every Department supervisor.

Between 2011 and 2017, the Department promoted five patrolmen to sergeant. All five were among the top three on the relevant list; two of the five were African American. Mr. Brooks never ranked within the top three candidates and therefore never qualified for a promotion. In 2011, Mr. Brooks ranked seventh of seventeen candidates. Jeff Martin, a white officer who ranked first, was the first to be promoted off the 2011 List. The next top three candidates were Paul Berge (Caucasian), Scott Halper (Caucasian), and Michael Sneed (African American).

In 2012, Officer Berge was caught buying and using illegal drugs while working on a drug task force. Upon discovering Officer Berge's activities, Chief Regnier removed him from the drug unit, imposed a thirty-day unpaid suspension, and publicly passed him for promotion to sergeant, despite his ranking first on the 2011 List. Michael Sneed, third on the list, was promoted to sergeant next over the other two white officers.

Mr. Brooks placed ninth of sixteen candidates on the 2014 List. The top three candidates of the 2014 exam were Paul Berge (Caucasian), Scott Halper (Caucasian), and Jose Martinez (Hispanic). Paul Berge was the first person promoted off the 2014 List in early 2016. A new list was circulated in January 2018 from the 2017 testing cycle. The top three candidates were Bradford Latham (Caucasian), Michael Coash (Caucasian), and Steven Hunter (African American). Steven

Hunter was promoted at the next opening. Mr. Brooks did not participate in the 2017 exam.

**2.**

**a.**

In 2003, Mr. Brooks and four other African American officers sued the City of Kankakee for racial discrimination ("the *Baptist* litigation"). The parties settled, resulting in an "Agreed Judgment Order," which provided for the creation of a "Blue Ribbon Committee" that would review the Department's hiring and promotional testing policies.[2] The Agreed Judgment Order was to "remain in full force and effect through January 31, 2011 or for a period of two promotional examinations following the entry of the order, whichever occurs last."[3] The court entered the Agreed Judgment Order on September 22, 2005, and the order expired in 2011. At a 2014 Equal Employment Opportunity Commission hearing,[4] Mr. Brooks made references to a "consent decree" that the City was under, in reference to the *Baptist* litigation. He additionally alleged that there were "'officers that were on drugs' and 'nothing was being done.'"[5]

---

[2] Appellant's Supp. App'x 4–5.

[3] *Id.* at 6.

[4] The parties agree that it is unclear whether Mr. Brooks made these statements before the Equal Employment Opportunity Commission or the Illinois Department of Human Rights, or whether he made the statements related to his own charge or someone else's charge. The parties agree that the uncertainty or difference is immaterial.

[5] R.44 at 49.

When Chief Regnier heard Mr. Brooks's statements about the existence of a consent decree, he told Mr. Brooks that there was no such consent decree. At trial, Mr. Brooks testified that he had thought that the Agreed Judgment Order and a consent decree were "synonyms" and "very similar" and that his characterization was a mistaken reference.[6]

**b.**

On February 19, 2016, Mr. Brooks and Chief Regnier were in the Kankakee Mayor's office for a hearing on an unrelated reprimand that Mr. Brooks received for violating a Department pursuit policy. During this meeting, Mr. Brooks complained to the Mayor about the absence of an investigation into misconduct by Officer Berge. Mr. Brooks informed the Mayor that, four years prior, Officer Berge had crashed his police vehicle while leaving a tavern and misreported the crash as a "hit and run." Mr. Brooks alleged that nothing had happened to Officer Berge and that there had been a cover-up.

As a result of Mr. Brooks's statements to the Mayor, the City investigated the 2012 "hit and run" incident in 2016. After the investigation, Officer Berge acknowledged that

> in the early morning hours, he wrecked his personal vehicle into the side of a commercial building …, causing over $500.00 in damage to his vehicle, while under the influence of alcohol, and un-prescribed steroids, and left the scene without filing a police report, and that

---

[6] *Id.* at 87.

> police report was made later that same day as
> an unknown hit and run accident.[7]

Officer Berge was given a second thirty-day unpaid suspension, one of the highest forms of discipline an officer can receive short of being fired.[8] In addition, Officer Berge signed a "Last Chance Agreement" which stated that further violations of Department policy would be grounds for immediate and automatic termination.[9]

Both Chief Regnier and Lieutenant Passwater testified that prior to 2016, Mr. Brooks had repeatedly referred to a police cover-up, but had "refused to tell [them]" who was involved.[10] Lieutenant Passwater testified that he had told Mr. Brooks that "if he knew about misconduct, the only way that the administration would know about it is if somebody told [them] and that he needed to tell [them] what he knew about it."[11] Additionally, Department rules and regulations "require[d] officers to report misconduct to the administration."[12] At trial, Mr. Brooks testified that he learned of the hit-and-run cover-up around 2013. Nevertheless, Mr. Brooks did not divulge this information until 2016.

---

[7] Appellant's Supp. App'x 7.

[8] *See* R.44 at 176.

[9] Appellant's Supp. App'x 7.

[10] R.44 at 68.

[11] R.45 at 58.

[12] *Id.*

**c.**

On April 12, 2016, Mr. Brooks spoke out again about Officer Berge's promotion to sergeant, this time at a Kankakee Police and Fire Commission public meeting. Mr. Brooks complained that Officer Berge had been caught using drugs and that "nothing had ever happened to him,"[13] that he wrecked a car and the incident was covered up, and that Officer Berge was still promoted to sergeant, in violation of a consent decree. Lieutenant Passwater, who was in attendance, testified to Mr. Brooks's statements at the meeting:

> He stood up and said … that the department was under a consent decree, and they weren't following that in relation to promotions being handled. He also stated that … officers had been promoted that had been using drugs and were caught driving drunk or DUI or involved in other activities that had been against Department policy.[14]

At trial, Mr. Brooks testified that he made these statements because he felt he had a "civic duty to report any illegal activity that was being performed by any officer; and if [he] felt that it was not being punished or … that the people in charge was covering it up, [he] felt [he] had a duty to report it."[15]

---

[13] R.44 at 64.

[14] R.45 at 52.

[15] R.44 at 99–100.

On April 25, 2016, Chief Regnier issued a written repri-
mand letter to Mr. Brooks for "making disparaging remarks
about the Police Department."[16] The letter alleged three in-
stances of such statements: (1) at the EEOC hearing in 2014;
(2) at the discipline hearing in the Mayor's office on Febru-
ary 19, 2016; and (3) at the Kankakee Police and Fire Com-
mission meeting on April 12, 2016. The reprimand letter
stated:

> During these instances you have made state-
> ments that are not true, and in fact damaging,
> to not only the Police Department, but your fel-
> low officers and yourself. At the EEOC hearing
> you made reference numerous times about a
> Consent Decree the City was under from your
> law suit. No Consent Decree was ever entered.
> The only agreement coming from the law suit
> was an agreement to use a "Blue Ribbon
> Committee" for the purpose of providing ad-
> vice on the next promotional process. The City
> did not lose the law suit and certainly no
> judgement was entered against the City. Your
> representations are factually false.
>
> You also have made statements about a specif-
> ic officer's drug use, his promotion and an ac-
> cident in which he was involved. All of these
> incidents have been dealt with, and adjudicat-
> ed by the Administration. The discipline ad-
> ministered by the Department to another of-

---

[16] Appellant's Supp. App'x 1.

ficer is, quite frankly, none of your business or anyone else'[s] for that matter, except for the officer involved. However, you may be assured that the matter was handled with proper discipline involved, contrary to your inappropriate public statements.

You have taken it upon yourself to profess these inaccurate facts and stories to which you have no factual basis except what you think or what someone else may have told you. The instances you have alleged took place a number of years ago and yet you make public statements as if the incidents have recently happened.

You make these inaccurate and false claims at times that are beneficial only to you and have no bearing on the reason for the hearing or public meeting you are attending. You also use ambush type tactics to make these claims as to ensure that your claims can not be rebutted. In essence you are waging a battle against your own peers and damaging the Police Department as a whole.[17]

Accordingly, Chief Regnier found Mr. Brooks to be in gross violation of numerous Department policies and proce-

---

[17] *Id.* at 1–2.

dures.[18] The Reprimand concluded by ordering Mr. Brooks "to cease any further public disparagement of the Kankakee Police Department or criticism of other police officers including the statement of inaccurate information, in public, or private."[19] A future violation would be grounds for Mr. Brooks's discipline "up to and including termination" with the Department.[20]

**B.**

Mr. Brooks filed a complaint against the City alleging retaliation for engaging in protected activity in violation of Title VII. Mr. Brooks alleged that, after the *Baptist* litigation,

---

[18] Specifically, Chief Regnier found Mr. Brooks in violation of sections 340.3.2(f), 340.3.5(ac), and 340.3.5(af) of the Department's policies and procedures:

> Section 340.3.2(f) requires KPD employees to report any act by him/herself or another that could result in criminal prosecution or discipline. Section 340.3.5(ac) prohibits any off-duty conduct which any employee knows or should reasonably know is unbecoming a member of the KPD, which is contrary to good order, efficiency and morale, or which tends to reflect unfavorably on the Department or its officers. Section 340.3.5(af) prohibits giving false or misleading statements or misrepresenting or omitting material information to a supervisor, or any other person in a position of authority, in connection with any investigation or any reporting of department-related business.

R.27 at 13; *see also* Appellant's Supp. App'x 2.

[19] Appellant's Supp. App'x 3.

[20] *Id.*

the City retaliated against him, "including repeatedly refusing to promote plaintiff to the position of sergeant."[21] In addition, Mr. Brooks contended that the written reprimand issued on April 25, 2016, "threatened plaintiff with discipline 'up to and including termination' if he complained about disparate treatment … or if plaintiff made 'disparaging remarks about the Police Department' to the EEOC."[22]

The City moved for summary judgment. On Mr. Brooks's failure-to-promote claim, the City maintained that Mr. Brooks never placed within the top three candidates and therefore never met the Department's legitimate expectations for promotion to sergeant. In addition, no similarly situated, non-African American employee was treated better than Mr. Brooks. The City next contended that Mr. Brooks's retaliation claim was meritless and speculative, explaining that the "reprimand was not given for Brooks' complaints about discrimination, but Brooks' false statements in doing so," and that "he was not ordered to stop objecting to racial discrimination, but to stop making specific false and disparaging statements."[23]

In response, Mr. Brooks reiterated that Chief Regnier issued the reprimand letter because Mr. Brooks had opposed race discrimination by the Department. In his summary judgment response, Mr. Brooks, for the first time, introduced a disparate impact challenge to the oral interview compo-

---

[21] R.1 ¶ 6.

[22] *Id.* ¶ 8.

[23] R.16 at 25.

nent of the promotional exam as a "built-in headwind" for minority groups.[24]

The district court agreed with the City that Mr. Brooks failed to make out a prima facie case on his retaliation claim related to promotions and granted summary judgment in favor of the City. The court also declined to consider Mr. Brooks's newly introduced disparate impact claim. The court first distinguished "disparate impact" claims from "disparate treatment" claims, and ruled that to make a disparate impact claim, Mr. Brooks needed to have "plead[ed] that a specific, facially neutral employment practice caused a significantly disproportionate adverse impact based on a protected factor."[25] Mr. Brooks, however, made no disparate impact claim in his complaint, but alleged retaliation only. Moreover, prior to the response to summary judgment, there had been no filings or other suggestions that he was pursuing a disparate impact claim. The court, therefore, rejected his attempt to amend his complaint in this manner.

The court, however, denied summary judgment on Mr. Brooks's retaliation by reprimand claim. According to the court, the written reprimand qualified as an adverse employment action, and Mr. Brooks had come forward with sufficient evidence to raise a jury question as to whether his criticisms of the Department were reasonable, good faith complaints about preferential treatment on the basis of race.

---

[24] R.19 at 30.

[25] R.27 at 27.

## C.

## 1.

The district court conducted a two-day trial on Mr. Brooks's retaliation-by-reprimand claim. At the close of the City's evidence, Mr. Brooks moved for judgment as a matter of law. In denying his motion, the court stated:

> This is going to be a credibility fight. This comes down to credibility decisions. This is exactly why we have jury trials. The jury's going to have to decide—well, a number of issues related to credibility, intent, motive—all of those issues—which is not for the Court to decide at this time, certainly not when so many things are in dispute. The motion, therefore, is denied.[26]

The parties then proceeded to discuss jury instructions. The court referred to Seventh Circuit Pattern Civil Jury Instruction 3.02 Committee Comment (c), used when the question of what constitutes protected activity is contested, as a template.[27] To account for the three separate statements not-

---

[26] R.45 at 71.

[27] Seventh Circuit Pattern Civil Jury Instruction 3.02 Committee Comment (c) reads:

> c. Good Faith Belief: In many cases, the question of what constitutes a protected activity will not be contested. Where it is, however, the instruction should be revised as follows:

(continued … )

ed in the reprimand letter, Mr. Brooks proposed a disjunctive instruction requiring the jury to find that only one of the statements was protected.[28] The district court, however, in-

---

( … continued)

Plaintiff claims that he was [*adverse employment action*] by Defendant because of [*protected activity*]. To succeed in this claim, Plaintiff must prove two things by a preponderance of the evidence:

1. His [*protected activity*] was based on a reasonable, good faith belief that [*describe Plaintiff's belief regarding his protected activity, e.g., that he was fired because of his race*]. This does not, however, require Plaintiff to show that what he believed was correct.

2. Defendant would not have [*adverse employment action*] Plaintiff if he had [*not engaged in protected activity*] but everything else had been the same.

[28] Mr. Brooks proposed the following disjunctive jury instruction:

To determine whether any of the statements plaintiff made to the Police and Fire Commission, at the Mayor's office, and to the Illinois Department of Human Rights, were activity protected by statute, you should consider whether plaintiff was trying to make the police department look bad or whether plaintiff was speaking in opposition to preferential treatment on the basis of race.

If you find … that Plaintiff has proved this by a preponderance of the evidence *any of the statements he made to the Police and Fire Commission, at the Mayor's office, and to the Illinois Department of Human Rights, were activity protected by statute, then you find for Plaintiff.* However, if you find that Plaintiff did not prove this by a preponderance of the evidence, then you must find for defendant.

R.30 at 38–39 (emphasis added).

structed that, for Mr. Brooks to succeed, he had to prove (1) all three statements were based on a reasonable good-faith belief that Officer Berge was treated better because of his race, in violation of a court order related to employment practices; and (2) the Department would not have issued the reprimand letter if Mr. Brooks had not made any of the three statements.[29]

---

[29] The district court's jury instruction was as follows:

> Plaintiff claims that he was issued a disciplinary letter by Defendant because of his statements to the EEOC in 2014, his statements in the Mayor's office in February 2016, and his statements at the Police and Fire Commission Meeting in Spring 2016. To succeed in this claim, Plaintiff must prove two things by a preponderance of the evidence:
>
> 1. His statements to the EEOC in 2014 *and* his statements in the Mayor's office in February 2016 *and* his statements at the Police and Fire Commission Meeting in Spring 2016 were based on a reasonable, good faith belief that Paul Berge was treated better because of his race and that the KPD was violating a court order related to employment practices. This does not, however, require Plaintiff to show that what he believed was correct.
>
> 2. Defendant would not have issued the disciplinary letter to Plaintiff if he had not made the statements to the EEOC in 2014 *or* made the statements in the Mayor's office in February 2016 *or* made the statements at the Police and Fire Commission Meeting in Spring 2016 but everything else had been the same.
>
> In deciding Plaintiff's claim, you should not concern yourselves with whether Defendant's actions were wise,

(continued … )

Mr. Brooks objected to the court's conjunctive instruction because "any one of those three [statements] could be a retaliatory act"; therefore, the disjunctive "or" should have been used.[30] In the City's view, because "the disciplinary letter was issued after all three statements and because of all three statements," allowing the jury to find for Mr. Brooks on the basis that *any one* statement was made in good faith would present a but-for causation issue.[31] The court agreed with the City, explaining:

> The first paragraph now reads the way it does because … it cannot be that someone could make two bad-faith statements, one good-faith statement, and then the good-faith statement

---

( … continued)

> reasonable, or fair. Rather, your concern is only whether Plaintiff has proved Defendant issued a disciplinary letter to Plaintiff because of his statements to the EEOC in 2014 or his statements in the Mayor's office in February 2016 or his statements at the Police and Fire Commission Meeting in Spring 2016, and whether those statements were based on a reasonable, good faith belief that Paul Berge was treated better because of his race and that the KPD was violating a court order related to employment practices.

R.40 at 18–19 (emphasis added).

[30] R.45 at 84.

[31] *Id.* at 83.

would shield them from any type of discipline.

So that's why I used that in the conjunctive.[32]

As to Mr. Brooks's position that any one of the three state-ments could be the basis for a single, retaliatory action, the court explained that "the disciplinary letter encompasses all three events in one letter."[33] The court reasoned that if a good-faith and bad-faith statement were made in the same conversation, the jury could find properly that the activity was not protected. With the court's conjunctive instruction, the jury returned a verdict for the City.

**2.**

Mr. Brooks filed a renewed motion for judgment as a matter of law and a motion for a new trial. He first contend-ed that the undisputed evidence showed that he made the three statements in good faith and that he was therefore enti-tled to judgment as a matter of law. The court concluded that Mr. Brooks took too narrow of a view of the evidence. For example, at issue was not that Mr. Brooks had said that an officer was using drugs, but specifically that he had said, untruthfully, that nothing ever happened to him. Similarly, at issue was not that Mr. Brooks had made statements about the police cover-up of Officer Berge's car crash, but that Mr. Brooks testified that he had learned about the car crash in 2013 but only came forward with Officer Berge's name in 2016 at the Mayor's office. Finally, Mr. Brooks continued to make public statements about a consent decree, even after

---

[32] *Id.* at 97–98.

[33] *Id.* at 102.

having been told on multiple occasions that there was no consent decree against the City. Thus, "[t]his case was submitted to a jury because the credibility and motivations of the witnesses were squarely at issue."[34] Concluding that a reasonable jury could have found for the City, the court denied Mr. Brooks's renewed motion for judgment as a matter of law.

Mr. Brooks next requested a new trial, contending that the jury instructions misstated the law and were confusing to the jury. In particular, Mr. Brooks submitted that the use of the conjunctive "and" was legal error, and that the jury did not need to find that each of his three statements were made in good faith. The City responded that the disjunctive "or" was proper: even if the jury found that one statement was made in good faith, it could not negate a bad-faith statement. Without proving all three statements were made in good faith, the City continued, Mr. Brooks would fail the but-for causation requirement of Title VII. The court again agreed with the City because the reprimand letter was a single retaliatory act that was issued because of three instances of particular statements by Mr. Brooks. Because Mr. Brooks pleaded only a single count of retaliation and the unitary reprimand letter referenced all three statements, the court concluded that the jury had to find that all three statements were made in good faith.

The court next rejected Mr. Brooks's claim that the court misstated the law in instructing the jury to find that Mr. Brooks had a "reasonable, good faith basis" for his

---

[34] R.54 at 6.

statements. The court noted both that we had approved the use of a similar instruction in *Fine v. Ryan International Airlines*, 305 F.3d 746 (7th Cir. 2002), and that the Seventh Circuit Pattern Civil Jury Instructions expressly called for using such language.

The court entered judgment on February 20, 2020. Mr. Brooks now appeals.

## II

## DISCUSSION[35]

Mr. Brooks asks that we review the district court's posttrial denials of his motions for judgment as a matter of

---

[35] At oral argument, the panel raised the question of whether Mr. Brooks had standing. We also directed the parties to file supplemental briefs addressing the question of whether Mr. Brooks has standing. *See Schirmer v. Nagode*, 621 F.3d 581, 584 (7th Cir. 2010) ("Because standing is an essential and unchanging part of the case-or-controversy requirement of Article III, we must consider this jurisdictional issue even though the parties have not raised it." (internal citation and quotations omitted)). Upon consideration of the parties' submissions and further study of the record, we are satisfied that Mr. Brooks may press his allegation that the City retaliated against him for engaging in protected activity when it issued its letter of reprimand and had it placed in his employment file. The harm to him is neither hypothetical nor conjectural. It is present and real: Because of the City's action, he is *now* an adjudicated recidivist, and the City's action of which he complains here places him in special jeopardy of severe sanctions, including dismissal. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). The letter therefore constituted a "concrete and particularized" injury that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). A judgment in his favor would vindicate "a legally protected interest." *Id.*

law and for a new trial. In addition, he requests that we rein-
state his disparate impact claim. We discuss each in turn.

**A.**

**1.**

We review a district court's denial of a motion for judg-
ment as a matter of law de novo, viewing evidence in the
light most favorable to the nonmoving party. *Fabick, Inc. v.
JFTCO, Inc.*, 944 F.3d 649, 656 (7th Cir. 2019). We evaluate
whether any reasonable jury could have reached the same
conclusion. *Id.* (citing *Liu v. Price Waterhouse LLP*, 302 F.3d
749, 754 (7th Cir. 2002)).

Title VII's antiretaliation provision states, in relevant
part:

> It shall be an unlawful employment practice
> for an employer to discriminate against any of
> his employees … because he has opposed any
> practice made an unlawful employment prac-
> tice by this subchapter, or because he has made
> a charge, testified, assisted, or participated in
> any manner in an investigation, proceeding, or
> hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Mr. Brooks must demonstrate that "(1) [he] engaged in a
statutorily protected activity; (2) the [defendant] took a ma-
terially adverse action against [him]; and (3) there existed a
but-for causal connection between the two." *Abrego v. Wilkie*,
907 F.3d 1004, 1014 (7th Cir. 2018) (second alteration in orig-
inal) (citing *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851
F.3d 690, 695 (7th Cir. 2017)).

At trial, Mr. Brooks's retaliation claim hinged on whether his statements constituted statutorily protected activities.[36] Specifically, under the district court's instructions, the jury had to decide whether Mr. Brooks "had a good-faith, objectively reasonable belief" that he was opposing a violation of Title VII when he made each of the three statements. *Fine*, 305 at 753. On this element, we "ha[ve] consistently stated that utterly baseless claims do not receive protection under Title VII." *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 890 (7th Cir. 2004). We explained:

> The purpose of requiring that plaintiffs reasonably believe in good faith that they have suffered discrimination is clear. Title VII was designed to protect the rights of employees who in good faith protest the discrimination they believe they have suffered and to ensure that such employees remain free from reprisals or retaliatory conduct. Title VII was not designed to "arm employees with a tactical coercive weapon" under which employees can make

---

[36] Mr. Brooks is inaccurate in stating that "none of [the three elements to his retaliation claim] were contested at the trial in this case." Appellant's Br. 19. The court, in denying the City summary judgment, concluded that "[w]hether Plaintiff was intentionally lying about the extent of Berge's punishment to make the police department look bad or was making an honest public appeal in opposition to preferential treatment on the basis of race is a disputed material fact." R.27 at 33. Although the parties did not dispute the court's findings that the reprimand letter was "materially adverse" and that there was a causal link between Mr. Brooks's statements and the reprimand letter, the very issue at trial was whether his statements were statutorily protected.

baseless claims simply to "advance their own retaliatory motives and strategies."

*Id.* Unless a claim is "completely groundless[,] … [t]here is nothing wrong with disciplining an employee for filing frivolous complaints." *McDonnell v. Cisneros*, 84 F.3d 256, 259 (7th Cir. 1996).

On the other hand, we have "repeatedly held that a plaintiff need not prevail on her Title VII discrimination claim or have opposed an action that in fact violated Title VII to win a retaliation claim." *Fine*, 305 F.3d at 752. Statutory protection "is not lost simply because an employee is mistaken on the merits of his or her charge" or "if an employee drafts a complaint as best he or she can but does not state an effective legal claim." *Mattson*, 359 F.3d at 892.

### 2.

We now review Mr. Brooks's statements cited in his April 25, 2016 reprimand letter. At issue were Mr. Brooks's statements (1) that the City of Kankakee was under a "consent decree," (2) that a police officer crashed his car and nothing was done about it, and (3) that a police officer was caught using illegal drugs and that he was not disciplined. We review each statement in turn and the evidence presented to the jury.

Testifying before the EEOC in 2014, Mr. Brooks claimed that the Department was subject to a "consent decree." Mr. Brooks submits that his references to a "consent decree" were not "utterly baseless" or "completely groundless," and that his speech before the EEOC is explicitly protected by Title VII's antiretaliation provision. Instead, he was simply

mistaken, as he was actually referring to the Agreed Judgment Order that concluded the *Baptist* litigation.

At trial, the jury also heard testimony from Chief Regnier explaining why references to a "consent decree" were particularly disparaging to the Department; such references suggested that the Department was investigated by the U.S. Department of Justice for repeated civil rights violations. The City also presented testimony that multiple officers on multiple occasions had told Mr. Brooks that there was no consent decree. Mr. Brooks denied this at trial. Further, Chief Regnier testified that the Agreed Judgment Order, which Mr. Brooks claims to have been referencing in his 2014 and 2016 statements, expired in 2011.

At the Mayor's office, Mr. Brooks alleged that, in 2012, Officer Berge "had crashed a car, lied about the car crash, and then made a false police report."[37] He further stated that the City had ignored Officer Berge's wrongdoing and instead promoted him. Mr. Brooks maintains that, because his 2016 statement triggered the investigation into Officer Berge's 2012 car crash, his statement was "the opposite of 'baseless.'"[38] At trial, Mr. Brooks admitted that he knew about Officer Berge's car crash and false police report in 2013 but did not inform anybody of this information until he told the Mayor in 2016.

Both Chief Regnier and Lieutenant Passwater testified that Mr. Brooks had made statements regarding a cover-up

---

[37] Appellant's Br. 22.

[38] *Id.* at 23.

prior to 2016 but had refused to provide any names. Lieutenant Passwater testified that he told Mr. Brooks that Department rules and regulations required officers to report known misconduct to the administration. Chief Regnier testified that he knew nothing of Officer Berge's misreporting of the car crash when he promoted Officer Berge. Once Chief Regnier received the investigation report, he had considered firing Officer Berge, but decided that, because the car crash had occurred many years ago and kept under wraps for so long, there was a good chance that Officer Berge would get his job back through the appeals process, even if he was terminated. Instead, Chief Regnier opted for a thirty-day suspension and a last-chance agreement, under which Officer Berge agreed that any further misconduct would be grounds for immediate termination.

Finally, Mr. Brooks made statements at a Kankakee Police and Fire Commission public meeting that Officer Berge was caught using drugs, was promoted to sergeant, and that nothing ever happened to him. Mr. Brooks insists that his "accurate complaint about lenient treatment for a white co-worker cannot fairly be described as 'baseless.'"[39]

Chief Regnier and Lieutenant Passwater, however, testified that Mr. Brooks has publicly and repeatedly alleged that *nothing* ever happened to Officer Berge as a result of his misconduct, and that it was this assertion that disparaged the Department. Chief Regnier testified that Officer Berge was publicly passed over for promotion, despite securing the top spot on the 2011 List. Chief Regnier instead promoted Mi-

---

[39] *Id.* at 24.

chael Sneed, an African American officer. In addition, Chief Regnier sanctioned Officer Berge with a thirty-day unpaid suspension, the largest unpaid suspension Chief Regnier could issue short of termination. He also sent Officer Berge to treatment and subjected him to eighteen months of periodic drug testing.

The jury was entitled to conclude that each of Mr. Brooks's statements included varying degrees of factual falsehoods. The credibility and motivations of the disputes between Mr. Brooks and the City's witnesses were the very reason for a jury trial. The jury was entitled to believe or disbelieve all or portions of Mr. Brooks's or any of the witnesses' testimony. A jury could very reasonably conclude that there was no basis for stating that the Department was violating its consent decree; that Mr. Brooks deliberately employed the term "consent decree" to invoke negative connotations; and that he knew, but did not share, that the consent decree had expired many years prior. With respect to the alleged cover-up, a reasonable jury could conclude that Mr. Brooks knew about and intentionally did not disclose the information and therefore was, himself, involved in covering up Officer Berge's car crash. The jury could have concluded that his refusal to divulge information earlier indicated his lack of good faith. Finally, a reasonable jury could conclude that Mr. Brooks did more than simply complain about lenient treatment of a white co-worker. Rather, it could reasonably conclude that Mr. Brooks falsely and publicly alleged that *nothing* happened to Officer Berge. We therefore agree with the district court's conclusion that a reasonable jury, following the court's instructions, could conclude that Mr. Brooks's statements were not protected

and with its denial of Mr. Brooks's motion for judgment as a matter of law.

**B.**

We next turn to Mr. Brooks's request for a new trial on the ground that the jury instructions included a misstatement of the law. He submits that the jury instructions incorrectly required that the jury find that he made *all three* statements set out in the letter of reprimand in good faith. Rather, he submits, the jury should have been instructed that if it found *any one* of the three statements was made in good faith it could find that the letter was issued in retaliation and violated the retaliation prohibition of Title VII.

The principles governing our evaluation of this submission are well settled. We review de novo a district court's choice of jury instruction when the underlying assignment of error implicates a question of law. *Fabick*, 944 F.3d at 655 (citing *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 835 (7th Cir. 2016)). "In crafting jury instructions, however, the district court is afforded substantial discretion, and we will reverse only if it failed to state the law completely and correctly and the error caused prejudice." *Id.* (quoting *Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d 841, 846 (7th Cir. 2014)).

With these standards in mind, we now consider (1) whether the instruction inadequately stated the applicable law; and (2) whether that "error likely confused or misled

the jury causing prejudice" to Mr. Brooks. *Gile v. United Airlines, Inc.*, 213 F.3d 365, 375 (7th Cir. 2000).[40]

**1.**

We first assess whether the district court erred when it told the jury that it had to find that Mr. Brooks made *all three* statements in a reasonable, good-faith belief that the Kankakee Police Department was treating a white officer better than officers of other races. We evaluate the "jury instructions in their entirety when determining whether they properly informed the jury of the applicable law." *Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 730 (7th Cir. 2002) (citing *Reed v. Union Pac. R.R. Co.*, 185 F.3d 712, 715 (7th Cir. 1999)). The instructions need not be perfect, but they "must be correct legal statements and supported by the evidence." *Id.* (citing *Jaffee v. Redmond*, 51 F.3d 1346, 1353 (7th Cir. 1995)).

The letter of reprimand stated that Mr. Brooks had made three independent statements that had cast the police department in a bad light. The district court told the jury that, in order to conclude that the issuance of the reprimand letter was a retaliatory act, Mr. Brooks had to establish that he made each of the statements in good faith. In other words, he had to establish that his statements to the EEOC *and* his

---

[40] We are satisfied, from our examination of the record, that Mr. Brooks has preserved his jury instruction objection that the jury was incorrectly instructed that he was required to prove that all three statements were made in good faith. *See Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 729 (7th Cir. 2002) (noting that to preserve an objection, "the party must state the same grounds when objecting to the jury instruction as it does in its motion for a new trial or on appeal" (citing 9A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* 2d § 2254 (2d ed. 1997))).

statements at the Mayor's office *and* his statements at the Police and Fire Commission meeting were all based on a reasonable, good-faith belief. The district court explained that, because there was a "unitary reprimand letter" that "explicitly referenced [the] three instances," the jury had to find that Mr. Brooks "spoke[] in good faith as to all three complaints."[41] "If the jury were instructed otherwise," the court continued, "Defendant could be found liable even though Plaintiff did not have a good faith basis for one, or even two, of his statements."[42] The court also concluded that Mr. Brooks's proposed instruction would create a but-for causation problem. It reasoned that because the reprimand letter was written because of all three statements, "if any one or more of Plaintiff's statements was not made in good faith then Plaintiff would fail the but-for causation test."[43]

We respectfully must conclude that the district court misapprehended the task before it. There is no question, of course, that "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Here, Mr. Brooks alleges that issuance of the reprimand letter was a retaliatory act. It is that act—the issuance of the letter—that must meet the standard of *Nassar*. By contrast, the district court confronted a distinctly different question in crafting the instructions: It had to instruct the

---

[41] R.54 at 12.

[42] *Id.*

[43] *Id.*

jury to decide whether the City's characterization of the letter as a legitimate disciplinary measure was worthy of belief. As the district court acknowledged, and the City reiterates, "the letter was written *because of all three statements*"[44] and "thus would not have been issued if Brooks had made only one or two statements."[45] If the jury found that Mr. Brooks made one of the three statements in good faith, it would then be entitled to conclude that the letter was not a legitimate disciplinary measure.

In short, the district court's instruction was not tailored to the proof at trial or to the positions of the parties. No one contended that a reprimand letter would have been sent if one of the three instances mentioned in the letter had been done in good faith. Because only one of the three instances had to have been in good faith, the district court instructed the jury to find more than legally required; in effect, the district court held Mr. Brooks to proving three acts of retaliation to prevail.

**2.**

Even when a jury instruction is erroneous, we will grant a new trial only if the error prejudiced the complaining party. *Kuberski v. REV Recreation Grp., Inc.*, No. 20-3127, 2021 WL 3076749 (7th Cir. July 21, 2021). "This is true even for 'patently incorrect' instructions." *Id.* at *4 (quoting *Gile*, 213 F.3d at 375). To determine if the complainant has suffered prejudice, "we view the evidence as a whole to determine whether the

---

[44] *Id.*

[45] Appellee's Br. 29.

jury could have reached a different outcome had the instructions been correct." *Id.* Even in cases where the erroneous jury instruction caused a party to bear a heavier burden, we have held that no prejudice occurred when the evidence was so weak that it would have failed under either burden. *See id.* at *4–5 (finding no prejudice because plaintiff's own conduct prevented him from establishing breach of warranty, regardless of whether the jury was instructed on a higher or lower standard); *Boyd v. Ill. State Police*, 384 F.3d 888, 895–96 (7th Cir. 2004) (finding no prejudice as evidence of race discrimination was so thin that "even if proper instructions had been given," plaintiffs failed to show that race was "a factor at all").

The evidence presented at trial fails to show that Mr. Brooks would have prevailed even if the jury had understood that he had to prove only one of the statements was made in good faith. As we stated earlier, every one of Mr. Brooks's statements included varying degrees of factual falsehoods, and the jury was entitled and reasonable in disbelieving his testimony.

Mr. Brooks submits that his references to a "consent decree" were good-faith mistakes. But even if Mr. Brooks in good faith mistakenly referred to the "Agreed Judgment Order" as a "consent decree," his statement, read as a whole, was unreasonable. The Agreed Judgment Order created a committee to review the Kankakee Police Department's hiring and promotional testing policies. Mr. Brooks's references to the City violating a "consent decree" were not based in any reasonable allegation of discriminatory hiring or promotions. Mr. Brooks's focus on the mix-up between the two types of documents misses a more important point, that the

Agreed Judgment Order expired in 2011. Yet, Mr. Brooks, in 2014 and 2016, continued to invoke this document to suggest that the City was in violation of the order, when he, because of his involvement, knew that this was not the case.

As to the statements in the Mayor's office, by not disclosing Officer Berge's alleged cover-up for three years, Mr. Brooks was not acting in good faith. Indeed, Mr. Brooks violated Department policy by not disclosing this information earlier. Finally, Mr. Brooks publicly alleged that an officer had been caught using drugs and driving drunk, that he did not receive any discipline, and that he was still promoted to sergeant, in violation of a "consent decree." By the time of the Police and Fire Commission meeting, Mr. Brooks was told on multiple occasions that there was no such "consent decree." His later references therefore cannot be considered good-faith mistakes. Further, his allegations that white officers were treated better and even promoted after serious disciplinary infractions were made without any sort of comparator. To the degree that Mr. Brooks is presenting himself as the comparator, he never qualified for a promotion: he never ranked within the top three qualifying spots. In making such statements, Mr. Brooks failed to establish any *reasonable* opposition to a violation of Title VII.

We conclude that the evidence of either good faith or reasonableness in making these statements was so lacking that a proper jury instruction would not have made a difference in the outcome. Because Mr. Brooks cannot demonstrate prejudice from the erroneous instruction, he is not entitled to a new trial.

## C.

We finally turn to the district court's dismissal of Mr. Brooks's disparate impact claim. Mr. Brooks attempted to raise a disparate impact claim with respect to the oral-examination component of the promotion process. We review a district court's denial of a motion to amend the complaint for abuse of discretion. *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996).

There was no abuse of discretion here. The disparate impact claim that Mr. Brooks sought to append to his complaint through his reply to the City's summary judgment motion is far more than a new theory based on the same facts. It is an entirely new cause of action never before mentioned in the litigation and requiring a factual development very different from that needed for the retaliation by failure to promote claim. Retaliation is specific to Mr. Brooks and the statements Mr. Brooks made; disparate impact is general to a protected status and therefore requires distinct facts that were not alleged until his summary judgment response. The facts required for a disparate impact claim—a facially neutral policy and an adverse impact based on a protected factor—are entirely missing from Mr. Brooks's complaint. Moreover, the facts of record here, including the promotion of African American officers to forty percent of the sergeant positions in the last three rounds of promotional testing, hardly provide the basis for a disparate impact claim. Mr. Brooks therefore failed to put the City on notice of his separate claim.

## Conclusion

The district court properly denied Mr. Brooks's motions for judgment as a matter of law and for a new trial. It also properly rejected his attempt to introduce a disparate impact claim at the summary judgment stage. We therefore affirm the judgment of the district court.

AFFIRMED